# REYNOLDS et al. v. BOARD OF PUBLIC INSTRUCTION FOR DADE COUNTY, FLA., et al.

## No. 11224.

Circuit. Court of Appeals, Fifth Circuit.
April 23, 1945.

Charles H. Hyde, of Coral Gables, Fla., and Edward L. Semple, of Miami, Fla., for appellants.

J. Velma Keen, of Tallahassee, Fla., R. W. Shackleford, of Tampa, Fla., and John J. Lindsey, of Miami, Fla., for appellees.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

The public schools of Dade County, Florida, have about 40,000 pupils, and 1400 principals and teachers, about one-fifth of them colored. Control is vested by State laws in a Board of Public Instruction composed of five citizens elected for a term of four years, and a Superintendent of Public Instruction elected for a like term and ex officio a member of the Board.

The complaint was filed by Hubert C. Reynolds as a class suit in behalf of himself and 262 other colored principals and teachers in the public schools against the Board of Public Instruction of Dade County, and James T. Wilson, the Superintendent of Public Instruction in that County. The allegation is that the defendants, acting for the State of Florida, have "a policy, custom and usage" by

755

which they pay the white principals and teachers of the County higher salaries than they pay the colored principals and teachers, "solely because of their race and color", contrary to Article XII, Sects. 1 and 12 of the Florida Constitution, which provide for a uniform system of public free school in which colored children shall be taught in separate schools from the white children, but with impartial provision for both; and contrary to the provision of the Fourteenth Amendment of the Constitution of the United States, forbidding a State to deny the equal protection of the laws. The relief prayed is a declaratory judgment that "the policy, custom and usage" is contrary to the Fourteenth Amendment, and an injunction against continuing the same. To show the existence of an actual controversy authorizing a declaratory judgment it is alleged, and admitted, that on Nov. 4, 1941, the colored teachers had sent the Board a petition for the equalization of salaries, with a letter calling attention to the unconstitutionality of the discrimination. It is alleged the petition was entirely ignored. The proof is that at once the then existing salary schedule, which on its face classified teachers as white or colored with different salaries, was abolished, and soon after a schedule adopted which specified other things as the basis of classification, with uniform salaries without distinction as to color; and a reclassification of each teacher under it was undertaken. Without further negotiation or contention the complaint was filed on Feb. 17, 1942.

We much doubt whether a concrete, actual controversy is shown within the meaning of the declaratory judgment statute, 28 U.S.C.A. § 400; or that any specific conduct is pointed out that could be enjoined. No individual is alleged or shown to have been wrongly reclassified, or to have protested his classification. The principals and teachers as a class had taken no further action nor made any further objection when they brought suit. The district judge, however, held there was an actual controversy, and the parties here argue only the merits of the case, so we consider only the merits.

The position of appellants is that the discrimination openly practiced before their petition was presented to the Board has been covertly continued since; or as their brief states it, "that the various systems of rating and grading were evolved for the

purpose of lending credibility to defendants' claim of non-discrimination, when as a matter of fact they are a sham and a subterfuge behind which to hide a fixed and determined intention of discrimination". That fact issue was tried by the district judge and his finding is: "At the time of the institution of this action substantially lower salaries were paid to the group composed of negro teachers and principals than were paid to the white teachers and principals as a group. The differential in the salaries so paid was not occasioned by the arbitrary act of the defendants, nor was such differential the result of an intentional, deliberate or systematic scheme to discriminate against the negro teachers and principals as a group, but resulted from the exercise of the judgment and discretion of the defendants as public officials in evaluating the worth and effectiveness of the respective groups. Prior to the commencement of this suit the defendants had adopted a new salary schedule by which, for the first time, the individual worth of teachers to the educational system was to be evaluated. Under the terms of said schedule a Rating Committee was appointed which consisted of five members, and there is no evidence which would justify an inference that any member of this Committee was possessed of conscious race prejudice. * * * The said Rating Committee appears to the court to have been reasonably competent and qualified from a professional standpoint to perform their duties as provided in the salary schedules, and it is further found as a fact that the Committee did approach their task in a conscientious and professional manner. The various classifications of both white and negro teachers and principals as determined by the Committee were without discrimination against the latter. * * * I further find that prior to the trial of this cause, each teacher and principal, both white and negro, was classified and rated, and that this was done conscientiously on the basis of determining teacher value and worth under the terms of the schedule upon a written rating sheet, and without consideration of the race or color of any teacher or principal, and that salaries are now being determined and paid on the classification and rating so done."

The district judge in these findings and in his conclusions of law distinguished between what had happened before Nov. 4, 1941, what was happening at the

filing of the suit Feb. 17, 1942, and the situation at the time of the trial which was concluded in March, 1944. The decision rests on the last finding, because the relief prayed, towit a general declaratory judgment that an unconstitutional discrimination is being carried on, with an injunction against its continuance, could only be operative in futuro. The salary schedule of 1940 appeared on its face to make a color discrimination. That a general average justice may have been accomplished under it does not justify it. Its wording would prevent doing equal justice to many individuals. It was properly abolished on Nov. 5, 1941, and a new salary schedule was adopted aimed at rating on the same basis the teacher worth of each individual teacher, white or colored. This was months before the filing of the suit and years before the trial. The old schedule, classifying teachers by color, was a thing of the past and not a matter to be adjudicated. But the judge in his conclusions of law held it, and the results under it, to be relevant evidence on the issue of bad faith and discriminatory intent continued under the new schedule. This holding we approve. The above quoted findings, however, do not relate to the old schedule, but to the new, first at the date of filing the suit, and next at the date of the trial. They mean not that group discrimination was intentionally continued, but that individual classification was made irrespective of color, and that the continuance of disparity between groups was not a continuation of class discrimination, but the result of honest effort to classify the individuals.

The evidence fully sustains these findings. The complainants offered as testimony only the interrogatories of James T. Wilson, the Superintendent of Education, for seven years past, and of Dan J. Conroy, Supervisor of Negro Education, which seem later to have been excluded, but both appeared as witnesses for the defense, and testified in great detail. They were both on the Rating Committee, which was composed wholly of professional teachers. No member of the defendant Board, elected by the people, was on it except that Wilson was ex officio a Board member. Their evidence, as also that of others who testified for the defense, fully and without contradiction supports the above quoted fact-findings. Complainant's only other evidence is the schedule of present salaries, which still shows that on an average and as a group the negro teachers and principals are not paid as high salaries as the white. This fact is now principally stressed.

The explanation the witnesses give is in brief this: Before November, 1941, the teachers and principals were classified as white and colored, the latter with lower salaries. The Board itself had already for six months recognized that this basis of classification was wrong, and a member had attended an educational conference to obtain better ideas. At the Board's meeting on Sept. 5, 1941, on its minutes it expressed its purpose to revise the salary schedule so as to pay teachers in line with their teaching abilities, and that the Superintendent take steps to give tests to all teachers, and in the meantime make only tentative contracts with them. The Superintendent was working on the kinds of tests and the points to be considered in rating teachers when the petition of the colored teachers was handed him and by him presented to the Board on November 5, 1941. The Board at once suspended the old salary schedule, and on Nov. 26 adopted one according to which the new tests and ratings were to be made for each individual without reference to color. This was amended twice before the trial in March, 1944, to make it more workable. Under it the testimony is that the same tests in the same room and at the same time were given the new teachers, both white and colored; and the old teachers were tested alike from time to time, until all were classified. The new basis of individual classification resulted in the change in the salary of many individuals, both white and colored, though it remained true that as a group the white were rated higher than the colored as a group. The witnesses all said this was not due to any prejudice or discriminatory purpose, but because on the average the negroes were not so well qualified in education, background, personality, and other things required by the schedule to be considered in classifying them. The Director of Instruction said this: "The negro is not an inferior race. The negro is an undeveloped race, as we know him in the South; and I believe from my educational training and my experience with the negro that if you give him the same training, the same background, the same food, the same environment, he will become and be as capable a man as a white man. That has not prevailed in Dade County, and it does not

prevail in Dade County at the present time. I say it with all tolerance and great sympathy for the problem which we face." It was pointed out also that the negro colleges from which teachers come are not yet the equal of the white colleges, and that negroes who had graduated in the northern white colleges proved better equipped than others. There was also a much narrower field to select the negro teachers from, for their applications were not numerous. On the other hand Miami was overflowing with high grade white teachers attracted there by the climate, so that in the last school year, notwithstanding the war conditions, 400 vacancies were filled with high-class white teachers without difficulty. The Superintendent testified that the continuance of the disparity between the average salaries of white and colored teachers, notwithstanding the individual classification had made many changes in individual salaries, was due to the fact that the old faulty schedule had after all done substantial average justice.

The trial judge saw and heard the witnesses testify, and believed them. We do, too. We are much impressed by a fact he did not mention. The amended salary schedule contains this provision: "If any employee be dissatisfied with the rating received, an appeal may be made to the Board and the Board shall promptly make available, at no expense to such employee, an examination under the supervision of the National Committee on Teacher Examinations. The result of the findings of the National Committee on Teacher Examinations shall be final and the said employee shall be increased or decreased in salary in accordance with said finding." Not a single appeal to this disinterested arbiter has been taken. Where all rating is on an individual basis, it is impossible that there should be a class discrimination except against members of the class. No case of individual unfairness has been revealed by an appeal and no witness has testified to any, though unintended errors are admitted.

■ We recognize that while the equal protection clause of the Fourteenth Amendment makes no mention of race or color, and permits reasonable classifications and the exercise of reasonable discretion by officials wielding State power, still a distinction in awarding public employment or compensation on no better basis than mere race or color would gen-

erally be arbitrary and forbidden. This was held as to public school teachers in Alston v. School Board, 4 Cir., 112 F.2d 992, 130 A.L.R. 1506, and no contention to the contrary is made in this case. We recognize, too, that equal protection may be denied, not only by arbitrary discrimination in legislation, or in quasi-legislation such as this Board's establishment of schedules of classification and the resulting salaries, but also by administration "with an evil eye and unequal hand." Yick Wo v. Hopkins, 118 U.S. 356, 373, 6 S.Ct. 1064, 1073, 30 L.Ed. 220. This case is rested squarely on the finding that here there is neither.

It is lastly argued that the Board filed some special defenses asserting that a difference in salaries of white teachers as a group and colored teachers as a group might be justified by the facts that the education of the former cost them more; that they had as teachers to live more expensively; and that the law of supply and demand might so result. These defenses were not tried out. No evidence was offered to support them. The evidence given is that no differences were in fact made for any such reason; and that indeed there was an over-supply of white teachers. We express no opinion as to whether differences so based would be arbitrary, or valid.

The judgment is affirmed.