Thomas H. FLAHERTY, Robert D. Koch, George Jiminez, Matthew W. Yerkey, Joseph M. Luksich, James Elliott, and William V. Youngblood, individually and for the Members of Local 2869, United Steelworkers of America, AFL–CIO, Plaintiffs,

v.

David J. McDONALD, individually and as President of the International Union, United Steelworkers of America, AFL–CIO; I. W. Abel, individually and as Secretary-Treasurer of the International Union, United Steelworkers of America, AFL–CIO; and Harold A. Rasmussen, Defendants.

No. 1072/58.

United States District Court
S. D. California,
Central Division.

Nov. 18, 1959.

Tony Geram, Fontana, Cal., for plaintiff.

Nutter, Arnold & Smith, Los Angeles, Cal., for defendant Harold A. Rasmussen.

WESTOVER, District Judge.

This action arises out of a controversy between Local Union No. 2869 of the United Steelworkers of America and International Union, United Steelworkers of America. Hereinafter Local No. 2869

will be referred to as Local, and International Union, United Steelworkers of America will be referred to as International. Plaintiffs are citizens of the State of California, members of Local and of International. Local is composed of more than six thousand members employed by Kaiser Steel Corporation at Fontana, California.

On June 8, 1958 Local held an election and, as a result, plaintiff Thomas H. Flaherty was elected president, plaintiff Matthew W. Yerkey, financial secretary, and plaintiff William V. Youngblood, grievance man. Three months after being inducted into office plaintiffs, along with all other elected officers of Local, were deposed from office, and defendant Harold A. Rasmussen was placed in charge of Local as Administrator.

On November 19, 1958 this action was filed by plaintiffs against David J. McDonald, individually and as president of International, I. W. Abel, individually and as secretary-treasurer of International, and Harold A. Rasmussen. Plaintiffs allege the action is brought on behalf of plaintiffs as well as on behalf of each and all other persons similarly situated who are members of Local and demand that the control of Local be returned to its duly elected officers. Plaintiffs allege diversity as grounds for jurisdiction. Plaintiffs contend they were removed from office arbitrarily and without charge.

The Constitution of International, Article XIII, in part provides:

"Section 1. Any charges against a member or a Local Union officer must be first submitted in writing to the Local Union of which the individual charged is a member or an officer."

And Article XIII further provides that a copy of the charges shall be sent

" * * * to the accused member at his last known address, together with written notice of the time and place * * * "

for the accused member to appear before a Trial Committee to answer the charges made.

Evidence in this case indicates no charge was ever filed against any of the officers of Local (including plaintiffs herein) and that there never was a hearing before a Trial Committee. Plaintiffs contend that as a consequence they were removed from office without compliance with the requirements of Article XIII of the Constitution of International.

At the trial of this action Alfred Kojetensky, District Director of St. Louis and one of a committee of two who made an investigation of the affairs of Local and recommended that an administrator be appointed, testified that they (the committee) were not proceeding under Article XIII but were proceeding under Article IX of the Constitution.

Article IX provides:

"Section 1. In the event the International President shall have reason to believe that any Local Union is failing to comply with any provision of the Constitution, he may institute proceedings upon the alleged violations, with due notice of hearing before any duly designated member or members of the International Executive Board. Upon the basis of the hearing the International Executive Board is authorized to render a decision, dismissing the charges of alleged violations, suspending or revoking the charter of any such Local Union, or directing such other action as may be necessary to secure compliance with the Constitution * * "

Nothing in the evidence indicates defendants attempted to comply with Article IX. Defendants contend that because of dissension within the Local Union and occurrence of many illegal work-stoppages and wild-cat strikes they were justified in removing officers of Local without charges, notice or trial, on the theory they were taking "such other action" as was "necessary to secure compliance with the Constitution."

Evidence introduced at the trial indicated Local was and has been full of dissension for some time. For years members of Local have not been able to agree, and at the time of the taking over of Local by defendant Rasmussen there were three well-defined groups or factions within Local. At the election held on June 8, 1958 the group headed by Thomas H. Flaherty seemed to be in ascension, and as a consequence Flaherty and the balance of his ticket were elected to office. The election of Flaherty and the balance of his ticket did not end dissension, as various members of Local refused to support the new administration. This resulted in difficulty in holding meetings of the membership. Some members refused to attend. Those who did attend were boisterous and noisy and refused to pay attention. In fact, at one time conditions were so bad officials of Local had to call in police to keep peace within the meeting.

Evidence at the trial further indicated that for many years Kaiser Steel Corporation has been plagued with unlawful work stoppages and wild-cat strikes. Although plaintiff Flaherty and his slate were in office for only three months before they were deposed, nevertheless, two very serious work stoppages and wild-cat strikes occurred during that period. The first occurred in the tin mill; the second in the railroad yards.

Kaiser Steel Corporation, wishing to place in operation a "second line" in the tin mill, attempted to transfer from the first line to the second line some of its older employees. Two of these older employees refused to man the second line when requested to do so and walked off the job. The grievance men of Local persuaded the two who had walked off the job to return, but when they returned to the tin mill they were given five-day suspension slips by management because of the unauthorized walk-off. When they received the five-day suspension slips these two men walked off the job for the second time, taking with them some ten or twelve others who were in sympathy.

Because of the walk-off and the wild-cat strike which lasted twenty-seven days it was necessary for management to lay off five hundred persons in the tin mill. This walk-out of disgruntled employees was not a minor matter. Officials of Kaiser Steel Corporation testified at the trial that because of the walk-out and lay-offs necessary because of it, the tin mill was closed down from September 13 to October 10, and some seventy-six thousand hours of work were lost by tin mill employees, aggregating $232,000 in loss of wages and in loss to the company of orders aggregating more than $10,-000,000.

The walk-out in the railroad yards was the result of a minor infraction on the part of two railroad yard employees. On pay-days employees in the railroad yards were supposed to pick up their checks "at the gate." One crew in the railroad yards during working hours drove their engine near the gate and walked over to the gate to pick up their pay-checks. When the foreman discovered the engine had been abandoned by the crew during working hours in order to pick up pay-checks, he gave the crew members suspension slips. As a result of these suspension slips there was an informal conference of all railroad yard employees, after which they walked off the job and proceeded to Local headquarters several miles distant to discuss the situation.

Although these men were advised by grievance men of Local to return to work and not leave the yard unattended, nevertheless, they continued the discussion for some four hours before returning to work. After they did return to work, several who had walked off the job were given suspension notices, with the result that all railroad yard employees with the exception of one crew walked off the job for the second time.

While the employees were discussing the railroad yard situation at Local headquarters, plant officials called Local headquarters and informed them that if the men did not return to work and attend

the furnaces, there was the possibility of an explosion which might cause loss of life and damages running into millions of dollars. Finally, after much discussion, the employees returned to work. Although the walk-offs in question in the railroad yards lasted only a matter of hours, nevertheless, it was a serious work-stoppage and could have resulted in great damage to the plant.

Grievance men testified that in both walk-off incidents they directed the men to return to work but the men refused to do so. Both the walk-off in the tin mill and the walk-off in the railroad yard were unlawful under the agreement between Kaiser Steel Corporation and International.

 International was the bargaining agent for Local. The agreement between Kaiser Steel Corporation and International had been reduced to writing and was binding not only upon Kaiser Steel Corporation but also upon International, Local, and every member thereof. Locals and their members must realize that they are bound by contracts negotiated by Union bargaining agents. They do not have any right to disregard the terms of contracts made in their behalf. Labor Unions may be liable and held to respond in damages for illegal walk-outs or wild-cat strikes. It is of the utmost importance that Labor organizations see to it that individual Locals and their members live up to contract terms in order to avoid a claim for damages. It was the duty of International in this case to require Local and each of its members to comply with the contract terms.

 The contract made between Kaiser Steel Corporation and International provides in part that all disputes shall be settled by conferences. Management agreed that during settlement of disputes there would be no lock-outs, and International agreed that pending a settlement of disputes there would be no walk-outs or wild-cat strikes. Every member of Local was bound by the agreement not to walk off the job pending settlement of disputes.

The contract set forth a procedure for settling all grievances which might arise between employees and employer. This procedure was divided into five steps. The first step was a discussion of the grievance between the aggrieved employee and the foreman. If the grievance could not be settled by this discussion, then under Step 2 the grievance was reduced to writing, delivered to the department superintendent, and there was a discussion with the department superintendent and the grievance committeeman.

If Step 2 did not settle the dispute, then Step 3 was employed, which was an appeal to the next monthly meeting of the grievance committee and the works manager or his representative. If the grievance was not settled by this procedure, Step 4 provided for discussion between two representatives to be selected by the Local and two representatives to be selected by the employer. If these four representatives could not settle the grievance, under Step 5 the matter was submitted to an impartial umpire to be selected by the American Arbitration Association.

It was agreed by International (and inferentially by all members of its Local Unions) that until all of these steps had been exhausted there would be no work stoppages or walk-outs. Individual members of Local both in the tin mill and in the railroad yards refused to abide by the agreement between International and Kaiser Steel Corporation and walked off the job before attempting to settle grievances by the method provided in the contract.

Defendants contend that because of the internal condition of Local and the fact that Local was not able to control its members, and because of unlawful work stoppages and wild-cat strikes, International not only had a right, but it was its duty to step in and take away the management of Local from its duly elected officers.

There is no question in the mind of this Court that the members of Local who walked off the job did so illegally and without right, and in utter disregard of the legal duty placed upon them by the contract. For such action they should be condemned.

On the other hand, International took over Local without proceeding according to the provisions of its own Constitution and By-Laws and removed Local's duly elected officers without due process. Just prior to the trial of this action defendant Rasmussen decided that management should be returned to Local but, instead of returning management of Local to its duly elected officers, attempted to hold a new election by which a new set of officers were to be put into office.

In this case a situation arises where two fundamental rights are clashing head-on, namely, the right of Local to elect and retain its own officers unless removed by due process, and the right of International to protect itself against illegal walk-outs and strikes.

■ There is no right more firmly imbedded in the American concept of liberty than the right of open and free elections. However, some Labor Unions in the past seem to have been of the opinion that this philosophy, no matter how deeply rooted in our freedom concept, does not apply to them. As a consequence, there is a long history of Locals having been placed in receivership, trusteeship, or under an administrator and held captive for years. All Labor Unions must come to the realization that a fundamental principal of American philosophy is open and free election and that a Local has the right to elect and retain duly elected officers, unless removed for cause and by legal processes.

■ There is another duty placed upon all Labor Unions, just as important as the duty of safeguarding free elections—a duty which came into existence among men long before the American philosophy of free elections—and that is the duty to abide by and live up to duly executed contracts.

In the case at bar International contends the duty to maintain its contract with Kaiser Steel Corporation was paramount to the right of Local to elect and maintain its own officers; that the right of Local to elect and maintain its own officers must necessarily give way to the right of International to maintain and hold inviolate the contract entered into with Kaiser Steel Corporation. Because of what will hereinafter be said by the Court, it is not necessary to determine which of these sacred rights is superior.

Defendants contend this Court lacks jurisdiction upon the following grounds:

1. That plaintiffs have failed to exhaust their administrative remedies.

2. That this is not a true class action.

3. That International is an indispensable party.

4. That there is not complete diversity between all of the plaintiffs and all of the defendants.

5. That there is no proof of the required jurisdictional amount.

■■ The general rule is that when internal or administrative remedies are provided the parties may not have recourse to the courts until such administrative remedies have been exhausted.

"It is the general and well established jurisdictional rule that a plaintiff who seeks judicial relief against an organization of which he is a member must first invoke and exhaust the remedies provided by the organization applicable to his grievance." Holderby v. International Union of Operating Engineers, Local Union No. 12, 45 Cal.2d 843, 291 P.2d 463, 466.

Defendants contend this Court does not have jurisdiction until after plaintiffs invoke and exhaust the internal remedies set forth in Section 6, Article XIII of the Constitution of International which provides for an appeal to the International Executive Board and thereafter to the International Convention. In this case there was no notice of trial and no

trial. There could have been no appeal from a trial. International arbitrarily decided to oust the officers of Local and did so without notice or trial.

■ In California the Constitution of International is considered a contract between International and its members. Smetherham v. Laundry Workers' Union, 44 Cal.App.2d 131, 111 P.2d 948; Davis v. International Alliance of Theatrical Stage Employees, 60 Cal.App.2d 713, 141 P.2d 486.

■ As a general rule one of the contracting parties cannot ignore portions of a contract and yet insist the other party live up to its terms. The contract is binding on all parties or on none. In this particular case International disregarded its contractual obligation relative to charges and trials of Local officers. It appears to the Court that International is in poor grace when it insists that it can disregard that portion of the Constitution relative to charges and trials and yet insist that those who have been deposed by International's action, contrary to its own Constitution, will have to take an appeal in compliance with the terms of the Constitution before having recourse to the courts.

" * * * he who demands the protection of the constitution should in the first instance give that protection." Underwood v. Maloney, D.C., 152 F.Supp. 648, at page 667.

Time is of the essence in this matter. Plaintiffs were elected for a two-year term. By the time plaintiffs could perfect an appeal to the International Executive Board and thereafter to the next regular International Convention it is possible that time would have run out and that the question presented would be moot. If plaintiffs are to have any relief at all from the administrative remedies, that relief must be prompt.

This Court is of the opinion that although it is the general rule that before recourse to the court may be had administrative remedies must be exhausted, nevertheless, under the peculiar facts and circumstances of this case plaintiffs come within the exception to the rule and have a right to appeal to the courts without first exhausting administrative remedies. Mooney v. Bartenders Union Local No. 284, 48 Cal.2d 841, 313 P.2d 857, 64 A.L.R.2d 1154; DeMonbrun v. Sheet Metal Workers, 140 Cal.App.2d 546, 295 P.2d 881; Underwood v. Maloney, D.C., 152 F.Supp. 648.

■ Defendants contend this is not a true class action. In this case plaintiffs as a class represent the Local and sue defendants as a class, representing International. Plaintiffs are alleged to represent six thousand members of Local. Defendants it is alleged represent one million two hundred thousand members of International. Because of the differences of opinion within Local, defendants contend plaintiffs cannot adequately represent the membership of Local. It is true that at the time of plaintiffs' election as officers of Local there were three major factions within Local, and it is also true that at the time this action was filed there was a difference of opinion within Local as to whether such an action should be filed.

At the trial defendants produced a large number of witnesses who had been elected to office in Local when plaintiffs were elected and who had been deposed by International. They testified they did not know that this action was to be filed and had never been consulted with reference thereto. Many of the witnesses testified further that when they discovered the action had been filed, no protest was made by them to any of plaintiffs concerning its filing. In fact, if they had any objection, they kept such objection to themselves.

It seems to the Court that the issue involved in these proceedings is of such importance that every member of Local would be concerned, regardless of the faction to which he belonged. It was important to all members of Local, in spite of differences of opinion among the membership, to know whether they as members of Local had a right to elect officers in an open and free election and to main-

tain those officers in office unless removed by due process.

Although there were differences of opinion on many subjects within Local ranks, and there might have been a difference of opinion as to whether or not these proceedings should have been commenced, nevertheless, there should have been an unanimity among all members, regardless of allegiance, when it came to the question of an open and free election. We know of none within the Local who would have a better right to present to the court this question than the duly elected officers of Local. At least at the time of their election they represented a majority of the membership, and certainly they would have a right as representative of the majority to present the question to the court. As far as plaintiffs are concerned, this Court is of the opinion that in these proceedings the named plaintiffs adequately and truly represent the Local Union.

However, as to the named defendants, the Court comes to a contrary view. Defendants are named as David J. McDonald, president of International, I. W. Abel, secretary-treasurer of International, and Harold A. Rasmussen, the Administrator. The problem is whether or not these three individuals adequately represent International with its membership of one million two hundred thousand persons.

█ The question whether a class action will fairly insure representation of all is a question of fact for the Court on which it passes judicially. Pelelas v. Caterpillar Tractor Co., 7 Cir., 113 F.2d 629; Weeks v. Boreco Oil Co., 7 Cir., 125 F.2d 84; Underwood v. Maloney, D. C., 152 F.Supp. 648.

According to Section 20, Article IV of the Constitution of International, it was the duty of the International Executive Board to enforce the Constitution and carry out instructions of International Conventions and to direct the affairs of International. Defendants McDonald and Abel were servants of the International Executive Board; the Board was not the servant of the president and secretary-treasurer. Plaintiffs herein were removed as officers, not by defendants McDonald and Abel as individuals but upon order from the International Executive Board.

At an early proceeding in this case a motion was made to dismiss defendants McDonald and Abel, as no personal service had been made upon them. The motion to dismiss was denied. The Court was probably in error in not granting the motion. Defendant Rasmussen was not the agent of either McDonald or Abel. He was the agent of or representative of International. Consequently, we must hold from the evidence in this case that defendants McDonald and Abel are not before the court as representing International. The only person before the court representing International is defendant Rasmussen. Can this Court hold that one person appointed by the Executive Board to take over the affairs of Local adequately represents an organization of one million two hundred thousand members?

Defendants contend International is an indispensable party, and because International has not been made a party this action must be dismissed. F.R.Civ. P., Rule 19, 28 U.S.C.A. Warfield v. Marks, 5 Cir., 190 F.2d 178; Lowry v. International Brotherhood of Boilermakers, 5 Cir., 259 F.2d 568.

█ Defendants contend there is not true diversity between plaintiffs and defendants. Plaintiffs are all residents and citizens of the State of California. The named defendants are all residents and citizens of States other than California. There could be diversity in this case only if the persons to be considered were the named plaintiffs and the named defendants. Ketcher v. Sheet Metal Workers' International Ass'n, D.C., 115 F.Supp. 802; Koster v. (American) Lumbermen's Mutual Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067. Inasmuch as this is an action against International there cannot be complete diversity.

■ Defendants further contend that although plaintiffs allege the amount in controversy exceeds the sum of $10,-000, nevertheless, plaintiffs have failed to prove such an allegation.

At a preliminary hearing defendants moved the Court to dismiss these proceedings upon the ground of lack of the jurisdictional amount. At that time plaintiffs had alleged the amount in controversy exceeded the sum of $10,000. When defendant Rasmussen was placed in charge of Local he took over all of the assets of Local, including the books, records, bank accounts, buildings, et cetera, and it was assumed at the time of the motion that the value of such assets exceeded the sum of $10,000. Also, one issue involved in this case was the right to elect officers and to keep those officers in office until removed by due process. The Court was of the opinion at the time of the motion that the right of open and free election in an organization of six thousand members would exceed the sum of $10,000 in value.

The motion of defendants to dismiss was denied, inasmuch as plaintiffs had alleged the required jurisdictional amount. However, at the trial no evidence was introduced regarding this issue. No evidence was presented relative to bank accounts taken over by defendant Rasmussen, the value of real estate occupied by Local, or the alleged value of the right of an organization with six thousand members to elect its own officers. The record is strangely silent in regard to these matters.

It is true the Constitution of International provides that dues to be paid by each member shall be five dollars per month, but there is no evidence that any dues were paid. If the Court is to hold with plaintiffs on this issue, it must make a finding to the effect that the amount in controversy exceeds $10,000. Such finding in the present state of the record would be erroneous because there is nothing in the record to sustain it, except assumptions to be made by the Court. Dermody v. Smith, D.C., 88 F.Supp. 620.

■ It is not the Court's opinion that jurisdiction can be established by speculation and conjecture. It was plaintiffs' duty to allege the required jurisdictional amount and, at the time of trial, to produce evidence to establish such amount. McNutt v. General Motors Acceptance Corp., 1936, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; McNutt v. McHenry Chevrolet Co., Inc., 298 U.S. 190, 56 S.Ct. 785, 80 L.Ed. 1141.

This plaintiffs have failed to do, and this is another reason for dismissal of the action for lack of jurisdiction.

If the Court should render judgment in favor of plaintiffs, against whom would the judgment be directed? Not against defendants McDonald and Abel as individuals, because they have never been served; not against International because it has never been made a party to the action. The only person before the Court is defendant Rasmussen.

It appeared that during the course of this trial defendant Rasmussen was removed as administrator and one, Geisert, was put in charge in Rasmussen's stead. Geisert has not been joined as a party defendant in this action. The Court could not order Geisert to return the affairs and property of Local to its duly elected officers, as he is not before the Court.

A problem similar to that in the case at bar was recognized in Kendig v. Dean, 1878, 97 U.S. 423, 24 L.Ed. 1061, in which the Supreme Court said:

"Suppose that the court had rendered a decree in the exact language asked for, * * * The court would find itself in the position of having made a decree it could not enforce, * * *"

For the reasons as herein set forth, this action is dismissed for lack of jurisdiction.