**Rev. L. A. CLARK, Mary A. Cox and W. R. Wren, Plaintiffs,**

**v.**

**Allen C. THOMPSON, Mayor, Douglas L. Luckey, Commissioner, Thomas B. Marshall, Commissioner, W. D. Rayfield, Chief of Police, George Kurts, Director of Parks and Recreation, Judge Leon F. Hendrick, Chairman of the Library Board, H. R. Dever, Mrs. Sadye F. Hart, David Lipscomb and W. V. Westbrook, each members of the Library Board of the City of Jackson, Mississippi, Defendants.**

Civ. A. No. 3235.

United States District Court
S. D. Mississippi,
Jackson Division.

May 15, 1962.

Robert L. Carter, New York City, Jack H. Young, Jackson, Miss., for plaintiffs.

Thomas H. Watkins, E. W. Stennett, Jackson, Miss., for defendants.

MIZE, Chief Judge.

Three Negro citizens and residents of Jackson, Mississippi, brought this action to enjoin the alleged enforcement of Sections 2046.5, 2056 and 4065.3 of the Mississippi Code of 1942, Recompiled. The complaint attacks the constitutionality of said statutes. The complaint further alleges that the defendant officials of the City of Jackson have denied plaintiffs the use of public facilities solely on the ground of race. Plaintiffs contend that they have been denied the right to use the public parks, libraries, zoos, golf courses, playgrounds, auditoriums and other public recreational facilities of the City. A three-judge Court was convened under Title 28 U.S.C. § 2281. A hearing on plaintiffs' motion for a preliminary injunction was consolidated with a hearing on the merits, and defendants' motion to dissolve the three-judge District Court was taken under advisement. After mature consideration, the Court concluded that this was not a proper case for a three-judge Court. 204 F.Supp. 30. Accordingly, an order has been entered herein dissolving the three-judge Court.

## FINDINGS OF FACT

None of the plaintiffs has been arrested or threatened with arrest under any statute or alleged discriminatory practice attacked in this case. The plaintiffs have not been denied any right,

privilege or immunity claimed by them by any of the defendants. Although each of the plaintiffs has been a resident of Jackson for more than 25 years, there is no evidence that they have been denied the right to use any public recreational facility in that city.

Jackson is a clean, progressive city of approximately 150,000 people, of whom more than 50,000 are Negroes. Jackson has been noted for its low crime rate and lack of racial friction except for the period in 1961 when the self-styled Freedom Riders made their visits. As the city rebuilt from the ashes of the Civil War, its white citizens occupied one area, and its colored citizens chose to live together in another. This custom has continued until today there are large areas of the city occupied entirely by white people and others inhabited exclusively by colored people. As this development took place, the city duplicated its parks, playgrounds, libraries and auditoriums in the white and colored areas. Under these circumstances, members of each race have customarily used the recreational facilities located in close proximity to their homes. The defendants believe that the welfare of both races will best be served if this custom is continued. They do not claim the right to require or enforce separation of the races in any public facility.

The fact that voluntary separation of the races in the use of public facilities has operated smoothly and apparently to the complete satisfaction of all concerned for many years, requires reasonable scrutiny of the evidence offered to show discriminatory action by the defendants. It is worthy of note that there was no evidence of the arrest or threatened arrest of any Negro in Jackson before the Freedom Riders aroused strained racial feelings in 1961. During that period two colored girls testified that they were arrested after they refused a police officer's order that they leave the North State Street library. Neither was a resident of Jackson. They showed no legal right to use any recreational facility in the city. Their exhibition was carefully planned for a month. They notified press and television of their intentions to break the customary racial use of the library facility. They were met at the library by a large group of newsmen, photographers and members of both races. This Court is convinced from the evidence in this case that this was not a bona fide effort on the part of citizens to use a public facility but, on the contrary, was a deliberate attempt to create racial friction. The same is true of the arrests of a colored boy and girl in Livingston Park. These isolated publicity stunts do not represent the will or desire of the 50,000 Negro citizens of Jackson. The cases arising out of those arrests are now pending in the Courts of the State of Mississippi, and this Court should not attempt to determine the merits of those State Court actions.

The complaint alleged that the plaintiffs represented themselves and "thousands" of Negroes in Jackson and all other parts of Mississippi. It also alleged that the plaintiffs can and will adequately and fairly represent the purported class. Both the right of the plaintiff to represent anyone other than themselves and their ability to adequately and fairly represent any other persons were denied by the defendants. One plaintiff testified that he purported to represent all Negroes in Jackson. Another testified that he purported to represent all Negroes in the United States. The third plaintiff testified that she purported to represent all races of peoples in the world. All of the plaintiffs admitted that they did not discuss this action with or obtain authority to file same from any other member of the purported class. They did not know what other persons agreed or disagreed with the position they were taking in this action. Neither the identity of the purported class nor the right and ability of the plaintiffs to represent same has been established.

The defendants are not enforcing separation of the races in public recreational facilities in the City of Jackson. The defendants do encourage voluntary separation of the races.

## CONCLUSIONS OF LAW

In view of the fact that the undisputed evidence shows that the plaintiffs have not been denied any right, privilege or immunity with respect to their use of public recreational facilities, there is serious doubt as to whether this case presents a justiciable controversy, but this Court is giving the plaintiffs the benefit of that doubt and finds that it has jurisdiction of the parties hereto and the subject matter hereof.

▆ This is not a proper class action, and no relief may be granted other than that to which the plaintiffs are personally entitled. Whether this is a proper class action involves a question of fact. Flaherty v. McDonald, D.C.Cal., 178 F.Supp. 544. The plaintiffs cannot make this a legitimate class action by merely calling it such. Pacific Fire Ins. Co. v. Reiner, D.C.La., 45 F.Supp. 703. The burden of proof on this issue was on the plaintiffs. Oppenheimer v. F. J. Young & Co., D.C.N.Y., 3 F.R.D. 220. The plaintiffs failed to meet this burden. A class action cannot be maintained where the interests of the plaintiffs are antagonistic to and not wholly compatible with the interests of those whom they purport to represent. Flaherty v. McDonald, D.C.Cal., 178 F.Supp. 544; Redmond et al. v. Commerce Trust Co., C.C.A.8th, 144 F.2d 140; Brotherhood of Locomotive Firemen & Enginemen v. Graham et al., 84 U.S.App.D.C. 67, 175 F.2d 802; Kentucky Home Mut. Life Ins. Co. v. Duling, C.C.A.6th, 190 F.2d 797; Advertising Specialty National Association v. Federal Trade Commission, C.C.A.1st, 238 F.2d 108; and Troup v. McCart, C.C.A.5th, 238 F.2d 289.

There has been no showing that any of the statutes attacked in this action have been enforced, and, therefore, the validity of said statutes are not involved in this controversy.

▆ Voluntary segregation does not violate the Constitution of the United States which does not prohibit a municipality from permitting, authorizing or encouraging voluntary segregation.

Rice et al. v. Elmore, C.C.A.4th, 165 F.2d 387; Reynolds et al. v. Board of Public Instruction for Dade County, C.C.A.5th, 148 F.2d 754; Ross v. Middlebrooks, C.C.A.9th, 188 F.2d 308; Rhea v. Edwards, D.C., 136 F.Supp. 671; Briggs v. Elliott, D.C., 132 F.Supp. 776; Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083; Cohen v. Public Housing Administration, C.C.A.5th, 257 F.2d 73; Holland v. Board of Public Instruction, C.C.A.5th, 258 F.2d 730; Shuttlesworth v. Birmingham Board of Education, D.C., 162 F.Supp. 372; Rippy v. Borders, C.C.A.5th, 250 F.2d 690; Avery v. Wichita Falls, C.C.A.5th, 241 F.2d 230; Borders v. Rippey, C.C.A.5th, 247 F.2d 268; Browder v. Gayle, D.C., 142 F.Supp. 707; Lassiter v. North Hampton County Board of Elections, 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072; Williams v. Howard Johnson Restaurant, C.C.A.4th, 268 F.2d 845; Eaton v. Board of Managers of James Walker Mem. Hosp., C.C.A.4th, 261 F.2d 521; Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835; Cove v. Parham, D.C., 176 F.Supp. 242; Carson v. Warlick, C.C.A.4th, 238 F.2d 724; Dawley v. City of Norfolk, D.C., 159 F.Supp. 642; Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5; Butler v. Thompson, D.C., 97 F.Supp. 17; and Williams v. State of Mississippi, 170 U.S. 213, 18 S.Ct. 583, 42 L.Ed. 1012.

▆ The three plaintiffs are entitled to an adjudication of their personal claims of right to unsegregated use of public recreational facilities by a declaratory judgment herein.

▆▆ Under the facts of this case, the plaintiffs are not now entitled to injunctive relief. In so holding, this Court is seeking to observe a vital and fundamental policy which for many years has been pronounced and followed by the United States Supreme Court and by other Federal Courts to the effect that Federal Courts of equity shall conform to clearly defined Congressional policy by refusing to interfere with or embarrass threatened prosecution in State Courts except in those exceptional cases which

call for interposition of a Court of equity to prevent irreparable injury which is clear and imminent. Injunctive relief will never be granted where the parties seeking same have adequate remedies at law. Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324, 87 L.Ed. 1324; Cobb v. City of Malden, C.C.A.1st, 202 F.2d 701; Brown v. Board of Trustees, U.S.C.A.5th, 187 F.2d 20; and State of Mo. ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208.

■ A desire for a sweeping injunction cannot relieve plaintiffs of the obligation to comply with the general rule that they must present facts sufficient to show that their individual needs require injunctive relief. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512; McCabe v. Atchison T. & S. F. Ry. Co., 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169; Brown v. Board of Trustees, U.S.C.A.5th, 187 F.2d 20; and Kansas City, Mo. et al. v. Williams et al., U.S.C.A.8th, 205 F.2d 47.

■ The Supreme Court of the United States, in the case of Bailey et al. v. Patterson et al., 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512, held that the issuance of an injunction was an extraordinary and unusual writ. This, of course, does not announce any new law. The granting of an injunction is discretionary and dependent upon the facts of each case. It should be granted with great caution, care and deliberation on the part of the trier of the facts, and the power to issue injunctions should not be lightly indulged in, but exercised sparingly, after thoughtful deliberation and the presence of an urgent necessity. See 28 American Jurisprudence, Injunctions, Section 25, p. 515. Quoting briefly from that authority, it lays down the rule as follows:

"The relief should be awarded only in clear cases, reasonably free from doubt, and when necessary to prevent great and irreparable injury."

The Court of Appeals of this Circuit in the case of Reliable Transfer Company v. Blanchard, 145 F.2d 551, spoke as follows:

"* * * It is hornbook law that 'Courts of equity exercise discretionary power in granting or withholding of their extra-ordinary remedies, and that although this discretionary power is not restricted to any particular remedy, it is particularly applicable to injunction since that is the strong arm of equity and calls for great caution and deliberation on the part of the court.'"

■ The individual defendants in this case are all outstanding, high class gentlemen and in my opinion will not violate the terms of the declaratory judgment issued herein. They know now what the law is and what their obligations are, and I am definitely of the opinion that they will conform to the ruling of this Court without being coerced so to do by an injunction. The City of Jackson, a municipality, of course is operated by some of these high class citizens. I am further of the opinion that during this period of turmoil the time now has arrived when the judiciary should not issue injunctions perfunctorily, but should place trust in men of high character that they will obey the mandate of the Court without an injunction hanging over their heads.

Neither the facts in the present case nor the exigencies of the situation are sufficient or urgent enough to require the granting of an injunction.

Although no injunctive relief should now be granted, this Court should retain jurisdiction over this action and each of the defendants for such further orders and relief as may subsequently be appropriate.