191 So.2d 646 (1966)
Mayfield VERDIN et al., Plaintiffs-Appellees,
v.
Alma Authement THOMAS et al., Defendants-Appellants.
No. 6718.
Court of Appeal of Louisiana, First Circuit.
September 19, 1966.
Rehearing Denied November 9, 1966.
*647 John A. Gordon, of Doyle, Smith & Doyle, New Orleans, for appellants.
Charles J. LeBlanc, of Guzzetta & LeBlanc, John F. Pugh, of Pugh, Lanier & Pugh, Francis Dugas, Thibodaux, for appellees.
Before LOTTINGER, LANDRY, REID, BAILES and LEAR, JJ.
*648 BAILES, Judge.
This appeal arises out of a petitory action filed by fifty-nine named plaintiffs, and for all other heirs at law of Dominique Billiot, Alexandre Billiot and his wife, Marguerite Verdin, Mathilde Billiot and Neuville Billiot, as a class action, claiming title to certain lands located in Lafourche and Terrebonne Parish, Louisiana. The defendants are Alma Authement Thomas, Warren M. Simon, Walter Hunter, George Wray Gill, Joseph H. Baynard, Placid Oil Company, and Etienne Perrin, Jr. Attached to the petition is a partial list of heirs of the decedents showing the complexity of the Billiot family representation. It was alleged in the petition that the defendants acquired title to various interests in this subject property by conventional conveyances and through a tax sale.
After considerable delay, a joint petition was filed in which the plaintiffs and defendants sought the authority of the court to compromise the dispute between them, and all persons of the plaintiff class represented. This joint petition for compromise was filed on April 1, 1965, and it was proposed thereby that the property in dispute would be owned henceforth according to the following division of ownership, to-wit:

TRACT A: The SW/4 of the SW/4 of Section 36, Township 19
 South, Range 20 East, of the Southeastern Land District of
 Louisiana, west of the Mississippi River, situated in the Parishes
 of Lafourche and Terrebonne.
 (1) The Succession of Neuville Theodore Billiot and/or
 his heirs ----------------------------------------------------- 34%
 (2) Alma Authement Thomas ----------------------------------------- 25%
 (3) Simon Group --------------------------------------------------- 39%
 (4) Mark Picciola and Joseph Nicol share equally in --------------- 1%
 (5) Etienne Perrin, Jr. ------------------------------------------- 1%
TRACT B: The NW/4 of the SE/4, the SE/4 of the SE/4, Section 73,
 Township 19 South, Range 21 East of the Southeastern Land
 District of Louisiana, west of the Mississippi River, Lafourche
 Parish.
 (1) Succession of Mathilde Billiot and/or her heirs and Succession
 of Dominique Billiot and/or his heirs ------------------------ 34%
 (2) Alma Authement Thomas ---------------------------------------- 25%
 (3) Simon Group -------------------------------------------------- 39%
 (4) Mark Picciola and Joseph Nicol share equally in -------------- 1%
 (5) Etienne Perrin, Jr. ------------------------------------------ 1%

On October 1, 1964, all of the named plaintiffs, acting through their agents and attorneys in fact, Guzzetta and LeBlanc, attorneys at law, who represent these persons in this litigation, granted an oil, gas and mineral lease on the subject property. On October 5, 1964, a petition was filed to appoint a provisional administrator in the Succession of Mathilde Billiot, and the next day, a petition was filed to appoint a provisional administrator in the Succession of Dominique Billiot. On the same date of the applications, provisional administrators were appointed by the court and letters of administration were duly issued. On October 7, 1964, in both successions, applications were made to the court for permission to grant oil, gas and mineral leases on the subject property. The applications were advertised, in accordance with law, *649 and on October 19, 1964, after hearing thereon, judgment was rendered granting authority to the provisional administrators to enter into the leases.
When the joint petition for authority to compromise the dispute over the title to the subject property was presented to the trial court, the court ordered the giving of public notice thereof. Of the several oppositions that were filed to the proposal of compromise only the opposition of a group of persons alleging themselves to be Billiot heirs and their mineral lessee, Diamond Four Corporation remains unsettled. This group, which for simplicity we will call the Diamond Four Group, is the appellant herein.
The basis for the standing of this Diamond Four Group in this litigation is the granting by these alleged specific Billiot heirs of an oil, gas and mineral lease on the subject property to the corporation called Diamond Four Corporation with an effective date of January 1, 1965, this, of course, being subsequent to the granting of the leases by the provisional administrators to another lessee.
On the same date the joint petition of compromise was filed in this action, like petitions were filed in the Succession of Billiot, La.App., 191 So.2d 652, and Succession of Billiot, La.App., 191 So.2d 653, wherein authority of the court was sought to enter into the same compromise agreement. All three actions were consolidated for trial in the district court, as well as in this court; however, separate judgments will be rendered by us in each case.
In addition to the opposition filed by appellants to the class action, oppositions were filed in each of the above mentioned succession proceedings contesting the validity of the oil, gas and mineral leases granted by the provisional administrators and opposing the authority sought by said administrators to execute the proposed compromise agreement in the class action.
The trial court decreed that the class action brought by the plaintiffs was the proper proceeding; approved the compromise agreement relating to the division of ownership of the property; approved and confirmed the leases granted by the provisional administrators, and ordered the operator of the leases to deposit all royalties due the Billiot heirs in the registry of the court until a final determination of the rights of the Billiot group was made. The question of heirship of the Billiot group, as well as the question of quantum of attorney fees to be awarded plaintiffs' attorneys, were reserved for further proceedings in the trial court.
Before this court, the appellants have devoted considerable portion of their brief to advance their argument that plaintiffs have no standing in court because by the allegations of their petition and by their act of granting the mineral lease, they have unconditionally accepted the successions and the concept of the succession as a separate entity no longer exists. This argument might be tenable were it not for the fact that this is a class action taken for the good of and to benefit the whole class. Further, the argument of the appellants addresses itself to the substantive rights of the parties and not the procedural aspect of the case. The substantive rights of the parties are proper things to compromise, and that was the purpose of the compromise agreement to settle the dispute involving the substantive rights of the parties thereto. We find the cited cases of Foster v. Spann (1930) 170 La. 1019, 129 So. 622, Lowry v. The Atlantic Refining Company (D.C., 1964) 231 F.Supp. 775; 5 Cir., 363 F.2d 876, and the cases cited therein, are inapposite to the instant case. The question of whether any of the plaintiffs, as heirs of the decedents, have accepted the various successions is not now a matter of concern because of the compromise agreement and the judgment heretofore entered between the plaintiffs and defendants in the district court. As between the parties to this compromise agreement, entered into *650 and made the judgment of this case and not appealed from by the contracting parties, it is binding and effective.
We pass now to the points at issue, namely: The legality of the class action, the granting of the oil, gas and mineral lease by the provisional administrators of the successions of Dominique Billiot and Mathilde Billiot, and the approval of the compromise of the class action. We will discuss and determine the issues in that order.
Prior to the adoption of the Louisiana Code of Civil Procedure, this state had no codified procedure for a class action. This case alone points up the great need for a procedure for class action. The Code of Civil Procedure spells out the requisites for such an action and provides the safeguards for the protection of the rights of the unnamed parties to the action.
LSA-C.C.P. Article 591 provides that "A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties." The purpose of this provision is to allow the courts to reach a determination of the rights of parties in cases where the number of persons involved is so great that it would be impracticable to require the plaintiff to join all of them by actual service. There is no established number which must be involved before the class action may be instituted and the circumstances of each case must be considered to determine if the number involved is sufficient to warrant the bringing of the class action. See 67 C.J.S. Parties § 13, pp. 925-926. It must only be shown to be impracticable to join all of the persons involved; the plaintiff need not allege or prove that the joinder of all parties is impossible. See Harris v. Palm Springs Alpine Estates, Inc. (9 Cir., 1946), 329 F.2d 909, Williams, et al. v. Humble Oil & Refining Company (D.C., 1964), 234 F.Supp. 985, and Advertising Specialty Nat. Ass'n v. Federal Trade Com'n (1 Cir., 1956) 238 F.2d 108. The complexity of the heirship of the Billiots is shown by the numerous lists filed by the several attorneys in the record. The testimony shows that the Billiot heirs numbered somewhere between 270 and 500 people living in at least three different parishes. In our opinion, the impracticability of joining all of these heirs is obvious.
LSA-C.C.P. Article 592 states that "One or more members of a class, who will fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members." The purpose of the class action is to allow a small number of persons to sue on the behalf of the other members of the class. There has been no formula derived or percentage established to determine how many members of the class must join as plaintiffs to assure adequate representation. See Pelelas v. Caterpillar Tractor Co. (7 Cir., 1940) 113 F.2d 629; Way bright v. Columbian Mutual Life Insurance Co. (D.C., 1939) 30 F.Supp. 885; and Knowles v. War Damage Corp. (1948) 83 U.S.App. D.C. 388, 171 F.2d 15. The question of whether a class action will fairly insure representation of all is a question of fact for the court on which it passes judicially. See Weeks v. Bareco Oil Co. (7 Cir., 1941) 125 F.2d 84; Flaherty v. McDonald (D.C., 1959) 178 F.Supp. 544; Clark v. Thompson (D.C., 1962) 206 F.Supp. 539. The court, in Advertising Specialty Nat. Ass'n v. Federal Trade Com'n (1956) 238 F.2d 108, at page 119, quoted 3 Moore's Federal Practice 3425 (2nd ed. 1948), as follows:
"It is the unity of interest among members of the class which is controlling. `In determining the question (of adequate representation) the court must consider (1) whether the interest of the named party is co-extensive with the interests of the other members of the class; (2) whether his interests are antagonistic in any way to the interest of those whom he represents; (3) the proportion of those made parties as compared with the total membership of the class; (4) any other *651 factors bearing on the ability of the named party to speak for the rest of the class * * *'."
In the instant case, the parties plaintiffs named in the original petition numbered fifty-nine. This number, who have employed able counsel to represent them, would be a sufficient numerical proportion to represent the total membership of the class. There is a unity of interest between these named parties plaintiffs and the remaining portion of the Billiot heirs in a suit against the named defendants who, through various conventional conveyances and a tax sale, claim ownership of the subject land, which the Billiot heirs also claim. The plaintiffs in this action are clearly trying to establish ownership in the entire Billiot group. A common interest was recognized by this court in Vizier v. Howard (La.App., 1964) 165 So.2d 655, by virtue of a mineral lease where there was a single lease covering approximately thirtyfive separately owned tracts of land. In Williams v. Humble Oil & Refining Company (1964) 234 F.Supp. 985, the Eastern Division of the U.S. District Court stated that there was a community of interest between mineral and royalty owners of undivided fractional interests which would satisfy the "joint or common" interest required by Federal Rule 23. While there is a diversity of interest in that the heirs have granted different mineral leases, we feel that there was a common interest in the Billiot heirs on one hand as against the named defendants who were sued in this class action. Their common interest in claiming the ownership of the subject property is a sufficient basis for the institution of this class action.
Turning now to a consideration of the legality of the action of the provisional administrator, LSA-C.C. Article 3111 provides that the judge may appoint a provisional administrator when he thinks it is necessary to preserve, safeguard, and operate the property of the succession. LSA-R.S. 9:1491 specifically provides that upon the written application of the administrator, the court may authorize him to grant a mineral lease on all or part of the property belonging to the succession. In our opinion, the provisional administrators acted prudently and to safeguard the property of the succession in granting the mineral leases. The record shows that the succession property was part of a reservoir which was being drained by the surrounding landowners. Mr. George Dausch, Jr., an expert in petroleum engineering, stated that within fifteen years, there was a possibility that all of the products in this reservoir would be lost. The only prudent thing for the provisional administrators to do was to arrange for someone to drill wells for the Billiot Group and thereby protect the successions' share of the production. The lease, as authorized by the court, provides for a cash bonus of $305.55 and a minimum one-eighth royalty to be reserved to the estate as provided by LSA-R.S. 9:1491. The lease further provided, time being of the essence, that if the drilling of a well was not commenced by January 15, 1965, the lease would be forfeited. Considering the fact that the property belonging to the successions was being drained by the surrounding wells and considering the fact that the lease provided for the bonus and minimum royalty as required by the revised statute, we are of the opinion that it was to the manifest advantage of the succession that these leases were granted by the provisional administrators. Any delay in granting the lease would have extended the period of drainage and loss to the property, and therefore, the granting of the mineral lease was necessary to the preservation of the succession property. It is our opinion that these mineral leases are valid and that in granting them, the provisional administrators acted prudently in the interest of the successions they represent.
This brings us to a consideration of the propriety of the approval of the compromise of this action. Such action of the court is required before any compromise of the rights of class action plaintiffs can *652 be effected. See LSA-CCP Article 594. The ultimate approval of the compromise agreement was what actually brought forth this appeal. The evidence shows the compromise gave no advantage to any of the plaintiffs who brought the action over that gained by the whole class of plaintiffs. Mr. Thomas Guzzetta, one of the attorneys who represent the plaintiffs, testified at great length of the complexity of establishing the family tree, which to this day is not yet complete, and to the questionable ability of the plaintiffs to sustain the burden placed on them by LSA-CCP Article 3653 with reference to proof of title in this type action. He further testified of the great amount of time and effort expended in trying to identify and locate all the heirs of the decedents. It was shown that his law firm had worked with this matter for over ten years to establish the heirship not yet completed. Based on the testimony introduced, which we have considered in its entirety, we are of the opinion the trial court was correct in approving the compromise of this action, and we are of the opinion it is for the best interest of the whole class of heirs of the decedents.
Appellants strenuously object to the court considering any phase of this case except the question of whether the class action was properly brought, contending the trial court limited the hearing and the taking of testimony to this question only. In the notice of the fixing of the matter for hearing by the trial court it was stated that all issues raised in this matter would be heard at the appointed time. The court at no time limited the hearing to the question of the propriety of the class action. Appellants contend they have been denied the opportunity to present pertinent evidence on the question of the legality of the provisional administrator's mineral leases granted in the succession proceeding. It is noted in the record the trial court and opposing counsel offered counsel for appellants the opportunity to state what evidence he wished to offer as an effort toward a stipulation of the evidence; however, counsel for appellants declined the offer. We find no merit in appellants' contention that all issues discussed and passed on herein were not properly before the court.
For the reasons assigned herein, the judgment of the district court is affirmed at appellants' cost, and the matter remanded to the trial court for further proceedings not inconsistent herewith.
Affirmed and remanded.