286 So.2d 689 (1973)
Victor A. BUSSIE et ux.
v.
Blanche Revere LONG and Louisiana Tax Commission et al.
No. 9519.
Court of Appeal of Louisiana, First Circuit.
October 26, 1973.
Rehearing Denied November 26, 1973.
Writ Refused January 25, 1974.
*691 Kenneth C. DeJean and P. J. Laborde, Asst. Attys. Gen., Baton Rouge, for appellants.
J. D. DeBlieux and Frank Simoneaux, Baton Rouge, and Helen S. Kohlman and Helen Riley, New Orleans, for plaintiff-appellee.
J. Barry Mouton, Lafayette, for intervenor Mouton.
Before LANDRY, ELLIS and PICKETT, JJ.
LANDRY, Judge.
The Louisiana Tax Commission (Commission) appeals from judgment, rendered in this class action brought by plaintiffs, Victor A. and Gertrude Bussie, ordering the Commission to perform duties allegedly imposed by the Constitution and laws of Louisiana regarding the assessment of property at actual cash value for ad valorem tax purposes and equalization of property taxes, effective beginning with all tax rolls submitted subsequent to January 1, 1975. We affirm with an amendment extending *692 compliance time to begin with assessment rolls filed subsequent to January 1, 1976.
This case was filed June 27, 1967, against the then members of the Commission praying that the Commission be mandated to: (1) assess all property in the state at actual cash value for ad valorem tax purposes; (2) fix the percentage of actual cash value on which state ad valorem taxes must be collected and paid, and (3) carry out all provisions of law requiring equalization of assessments. Plaintiffs also requested orders restraining the Commission from approving tax rolls which assessed property at less than actual cash value, and further restraining the Commission from engaging in any actions in concert with parish assessors contrary to law regarding the assessment of property and equalization of taxes.
The named plaintiffs sue on behalf of themselves individually, as citizens and property taxpayers of the State of Louisiana, and on behalf of all other persons similarly situated. They alleged that the rights asserted are common to all property taxpayers who are assessed and pay ad valorem taxes. On July 27, 1967, J. Barry Mouton, Lafayette, Louisiana, intervened on behalf of the Commission.
Defendants filed peremptory exceptions based on plaintiffs' failure to file a sworn itemized list of plaintiffs' property as required by LSA-R.S. 47:1998 and Dixon v. Flournoy, 247 La. 1067, 176 So.2d 138, and plaintiffs' alleged failure to exhaust the right to administrative review as provided for by LSA-R.S. 47:1992. Additionally, defendants filed (1) a dilatory exception based on plaintiffs' failure to allege their domicile; (2) an exception to venue on the ground that Caddo Parish is the correct forum; (3) failure to join indispensable parties on the ground that the assessors in each parish were not made defendants herein, and (4) an exception of no cause of action premised on plaintiff's failure to allege that the assessments of plaintiffs or any member of the class represented exceeded 100% of actual cash valuation.
Initially the trial court overruled defendants' exception to the venue but sustained the peremptory exceptions based on failure to exhaust the right of administrative review and failure to attach a sworn itemized list of property to plaintiffs' petition. On appeal this court affirmed the decision of the trial court. Bussie v. Long, et al., La.App., 236 So.2d 68. However, writs were granted by the Supreme Court which reversed the decision of this court and the trial court and remanded this matter for trial on the merits. Bussie v. Long, et al., 257 La. 623, 243 So.2d 776 (1971).
On August 25, 1971, the League of Women Voters, a nonprofit corporation, intervened on behalf of plaintiffs. Trial below was held December 13, 1972, at which time all exceptions not theretofore passed upon were overruled by the trial court. On March 22, 1973, the trial court rendered judgment: (1) Decreeing the present system of administering the ad valorem tax laws as contained in La.Const. Article X, Section 1, and numerous statutes, violates the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, and Article I, Section 2, of the State Constitution; (2) enjoining the Commission from approving any assessment roll pursuant to LSA-R.S. 47:1993, unless all property listed thereon is assessed at actual cash value, effective commencing with all rolls submitted to the Commission after January 1, 1975; (3) mandating the Commission to immediately take steps to comply with laws requiring assessment of property at actual cash value for ad valorem tax purposes, to secure uniformity and equalization in the assessment of all taxable property throughout the state, and devise and submit to the assessors throughout the state a plan for establishment of actual cash value as the criteria for assessment of property and the achievement of uniformity and equalization of taxes throughout the state. The judgment accorded the *693 Commission a delay until January 1, 1975, to implement the decree.
The Commission has not reurged any of the exceptions overruled by the lower court at the commencement of trial. Both in the trial court and on this appeal, the Commission contends the entire matter has become moot because of the passage of numerous acts by the 1972 general and special sessions of the legislature, all of which will be subsequently considered in detail. In effect, the Commission maintains there is no longer a statewide ad valorem tax, neither is there a constitutional or statutory requirement for assessment of property at actual cash value. The Commission further argues that the mandamus issued herein was improvident in that its directives are impossible of attainment because of the Commission's limited staff and personnel.
The record was lodged in this court on May 22, 1973. Two exceptions of no right of action were filed herein by the Commission on June 15, 1973. The first is based on plaintiff's failure to allege and establish that class members were afforded proper notice and opportunity to either join or oppose the action. It is also claimed that plaintiffs have failed to establish adequate class representation as required by our class action statute.
The Commission's second exception of no right of action is founded on plaintiffs' alleged failure to assert a real and actual interest in the subject matter of this litigation or in the judgment prayed for. The Commission notes that plaintiffs allege the rights sought to be enforced are common to all taxpayers in the state who are assessed and pay ad valorem taxes pursuant to the unlawful and discriminatory practices followed by defendants as claimed by plaintiffs. The Commission notes the 1972 repeal of the state wide ad valorem tax which leaves in force and effect only parish and special district property taxes involving individual parishes or taxing districts composed of one or more parishes. Therefore, the Commission urges, plaintiffs no longer have a common interest with taxpayers outside plaintiffs' parish or such special taxing districts in which plaintiffs own no property.
THE EXCEPTION OF NO RIGHT OF ACTION BASED ON FAILURE TO GIVE NOTICE AND PROVE ADEQUATE CLASS REPRESENTATION
The Louisiana Class Action Statute is contained in LSA-C.C.P. arts. 591-597, inclusive. Article 591 provides as follows:
"A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
(1) Common to all members of the class; or
(2) Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right."
The source of the foregoing statute is Rule 23 of the Federal Rules of Civil Procedure. However, the official revision comment to Article 591, above, makes it clear that Louisiana has not adopted the Federal Class Action in its entirety, but has sanctioned only the "true class action" provided for under Federal Rules. A true class action requires community of interests between the plaintiff and the class he seeks to represent. Verdin v. Thomas, La. App., 191 So.2d 646; Caswell v. Reserve National Insurance Company, La.App., 234 So.2d 250.
An additional requisite for maintenance of a class action is that the member or members bringing suit shall adequately represent the entire class. LSA-C.C.P. art. 592.
*694 A definitive judgment rendered in a properly conducted class action is binding on all members of the class, whether joined or not, provided the members who were joined constitute adequate representation of the class as a whole. LSA-C.C.P. art. 597.
The Commission cites federal authority for the rule that notice is required in all class actions. Conversely, plaintiffs maintain that federal jurisprudence holds notice to be required only in the case of a spurious class action as provided for by F.R. C.P. Rule 23(b)(3), which type of proceeding is not permitted in Louisiana. Therefore, plaintiffs argue, notice is not necessary in the F.R.C.P. 23(b)(1) or true class action, in which category the instant matter falls.
In view of our finding that the exception in question is a dilatory exception of lack of procedural capacity which has been waived because of defendants' failure to plead same prior to answer, it is unnecessary to resolve the conflict noted.
A peremptory exception of no right of action challenges the alleged interest of plaintiff in the subject matter of the litigation. LeSage v. Union Producing Co., 249 La. 42, 184 So.2d 727; Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328. The peremptory exception defeats plaintiff's action. It is not waived by failing to plead it prior to answer as is the case in regard to a dilatory exception.
The dilatory exception of lack of procedural capacity puts at issue plaintiff's authority to bring suit as the legal representative of another; it does not defeat the action. Such is the nature of this exception in this case. The Commission challenges plaintiffs' capacity to stand in judgment herein as representatives of a class solely on procedural grounds. The Commission contends that plaintiffs have failed to give proper notice to the remaining class members, and have failed to establish that plaintiffs constitute adequate class representation. Therefore, the Commission urges, plaintiffs lack legal capacity to represent the class in question. The exception does not defeat plaintiffs' demands; it merely delays prosecution thereof until plaintiffs give the required notice and furnish proof of adequate class representation. The matter addresses itself to procedural defects which could be corrected had the exception been timely presented. The exception is dilatory. Jackson v. Dickens, La.App., 236 So.2d 81.
Our research of Federal authorities discloses instances in which Federal Courts have dismissed class actions upon timely filed exceptions based on alleged lack of notice and inadequate representation. Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84; Flaherty v. McDonald, D.C., 178 F. Supp. 544; Molina v. Sovereign Camp W. O.W., D.C.Neb., 6 F.R.D. 385.
We have found only one Federal case in which the court considered a tardily filed exception of this nature. We refer to Clark v. Chase Nat. Bank of City of New York, D.C.N.Y., 45 F.Supp. 820, which held that such an exception filed four years after institution of suit constituted an inordinate delay which operated as a waiver of the objection. We conclude that the Commission's exception of lack of procedural capacity to proceed with this class action has been waived by the Commission's failure to file same timely.
EXCEPTION OF NO RIGHT OF ACTION BASED ON PLAINTIFFS' LACK OF INTEREST IN THE SUBJECT MATTER OF THE ACTION
Succinctly stated, the Commission urges that plaintiffs have failed to assert a "real and actual interest" in the subject matter of this litigation as required by LSA-C.C.P. art. 681. Such an exception is peremptory and defeats plaintiffs' claim if well founded. Accordingly, it may be plead at any stage of the proceedings. LSA-C.C.P. art. 928.
*695 The Commission's position is founded upon Marshall v. Town of Marksville, 116 La. 746, 41 So. 57; State ex rel. Schoeffner v. Dowling, 158 La. 706, 104 So. 624; Cleveland v. Martin, La.App., 29 So.2d 516. These authorities establish the general rule that a citizen and taxpayer cannot seek mandamus to compel performance of a duty by a public board, officer or commission unless it is first established that plaintiff possesses a special interest in having a law enforced, which interest sets plaintiff apart from the general public as a whole. Also relying on Schoeffner v. Dowling, above, and La.Const. Article 5, Sections 13 and 14, the Commission maintains it is not the duty or prerogative of a private citizen to enforce state laws, but rather the obligation of the Chief Executive or Governor.
Plaintiffs concede that Schoeffner, above, and the other cited authorities establish the general rule as stated by the Commission. Plaintiffs assert, however, the jurisprudence is equally well established that said general rule is without application to instances involving the alleged illegal or improper expenditure of public funds or the violation of official duties which will impose a discriminatory tax burden upon or otherwise injuriously affect a taxpayer or his property as held in Borden v. Louisiana State Board of Education, 168 La. 1005, 123 So. 655; Graham v. Jones, 198 La. 507, 3 So.2d 761; Stewart v. Stanley, 199 La. 146, 5 So.2d 531.
The general rule urged by the Commission is stated in 52 Am.Jur.2d, Mandamus, § 388, p. 710, and § 390, pp. 712-713, from which we approvingly quote the following:
"As in other civil actions, the person invoking the relief must have a proper interest in, and a proper purpose to be served by, the act sought to be compelled. This interest must be presently existing, and, except in cases in which a party's interest as a taxpayer is sufficient, it must be beneficial, real and actual, direct and tangible, and different from and transcending that interest of citizens generally ....
The prevailing view is that where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result or any exclusive right or interest to be protected, but it is sufficient that he is interested as a citizen or taxpayer in having the laws executed and the duty in question enforced. In a proper case, one who is interested as a citizen or taxpayer in having a public duty enforced may institute the proceeding even though he is also personally interested."
The distinction noted in the foregoing rule is well established within our own jurisprudence. Peck v. Tugwell, 199 La. 125, 5 So.2d 524; Ricks v. Close, 201 La. 242, 9 So.2d 534; Carso v. Board of Liquidation of State Debt, 205 La. 368, 17 So.2d 358; Cully v. City of New Orleans, La.App., 173 So.2d 46; Akin v. Caddo Parish Police Jury, La.App., 234 So.2d 203.
Pertinent herein is the following language appearing in Schoeffner v. Dowling, above:
"... we think the great weight of authority is decidedly to the effect that, without some peculiar, special, and individual interest, a citizen, though he be a taxpayer, has no standing in court to champion a cause or subject matter which pertains to the whole people in common, nor has an individual citizen a legal standing in court to enforce the performance of a duty which a public officer owes to the public at large, unless it clearly appears that such individual citizen has a special and peculiar interest in the performance of such duty apart from the interest which he has as one of the general public in having the duty performed."
*696 Our own jurisprudence also recognizes that the requirement of a peculiar and special interest in the performance of an official duty exists and is satisfied in those instances wherein it is charged that an unlawful performance of duty, or refusal to perform, by a public official, discriminates against a citizen-taxpayer by either increasing his tax burden or otherwise injuriously affecting the taxpayer or his property. In this respect, the rule is stated in Donaldson v. Police Jury, 161 La. 471, 109 So. 34, as follows:
"The true doctrine of the cases in which taxpayers have been complainants is that they have the right to resort to judicial authority to restrain their public servants from transcending their lawful powers, or violating their legal duties in any unauthorized mode which will increase the burden of taxation or otherwise injuriously affect the taxpayers or their property."
To the same effect, see Cully v. City of New Orleans, above, which extended the rule by holding that the magnitude of plaintiff's right is of no consequence. Cully, above, also held that, notwithstanding plaintiff's right might be slight or difficult of measurement, it does not deprive plaintiff of his right of action.
Applying the rule in Schoeffner and Cully, above, we find that plaintiffs have alleged a special and peculiar interest entitling them to prosecute this action to mandamus defendant Commission to perform its lawful duty.
Accordingly, both exceptions of no right of action filed in this court are overruled.

ON THE MERITS
Plaintiffs allege that La.Const. Art. X, Sections 1 and 12, and LSA-R.S. 47:1951-2000, particularly Sections 1957, 1987 and 1989, mandates the Commission to establish and fix the actual cash value of all property in the state for ad valorem tax purposes. These constitutional and statutory provisions assertedly provide for a comprehensive system of assessment for tax purposes making it the duty and function of the Commission to: (1) Equalize taxes throughout the state and within each parish and each special taxing district comprising two or more parishes, or parts of two or more parishes or portions of a single parish; (2) determine the percentage of assessed value at which state levied millage shall be applied; (3) supervise the various parish assessors to insure their compliance with the ministerial duties required of assessors by law, and (4) fix and assess the value of all property not assessed by assessors.
It is alleged that the Commission has not discharged the above stated mandatory duties, but instead has historically countenanced an unlawful system of assessment allowing assessors to arbitrarily assess property at amounts having no real or consistent relationship to actual cash value. The Commission's system allegedly results in unequal payment of taxes as between taxpayers in the state, between taxpayers in the same parish, between taxpayers in different parishes, and between taxpayers in special taxing districts comprised of two or more parishes or parts of parishes or portions of a single parish. Plaintiffs also allege the system in effect requires their payment of taxes on a higher percentage of actual cash value than other owners of similar properties in other parishes.
The Commission concedes the law required its exercise of the functions outlined by plaintiffs at the time this action was instituted. The Commission contends, however, that by subsequent constitutional and statutory amendments enacted and approved in 1972, there is no longer a state wide ad valorem tax, neither is there a requirement for assessment at actual cash value. Therefore, so long as properties are assessed and taxed equally within each present taxing district, which consist of parishes only, a taxpayer has no ground for complaint based on alleged discrimination or unequal payment of taxes.
*697 A better understanding of the precise issues raised herein will be facilitated by a discussion of the relevant constitutional articles and statutes and the amendments thereto enacted and approved in 1972. It is pertinent to observe that said amendments appear specifically designed to avoid the result sought by plaintiffs herein.
La.Const. Art. X, Section 1, reads in pertinent part as follows:
"Section 1. Vesting of power; restrictions; assessments and valuations. The power of taxation shall be vested in the Legislature; shall never be surrendered, suspended or contracted away; and all taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only. No property shall be assessed for more than its actual cash value, ascertained as directed by law, and all tax-payers shall have the right of testing the correctness of their assessments before the courts at the domicile of the assessing authority, or as may be directed by law. The valuation and classification fixed for State purposes shall be the valuation and classification for local purposes; but the taxing authorities of the local subdivison may adopt a different percentage of such valuation for purposes of local taxation."
Prior to 1972, La.Const. Art. XII, Section 17, and Art. XVIII, Section 3, provided for the state wide levy of a total of two and one-quarter mills on all taxable property. The proceeds of the taxes were dedicated to specified purposes. Act 17 of the Extra Session of 1972, approved by the electorate November 7, 1972, added Article X-A to the Constitution, which Article repealed the state wide taxes levied by former Section 17 of Article XII and Section 3 of Article XVIII.
La.Const. Art. X, Section 12, formerly provided simply that "All real estate, exempt as well as taxable, shall be valued at actual cash value, listed on the assessment rolls and submitted to the Louisiana Tax Commission." This section was repealed by constitutional amendment pursuant to Act 789 of 1972, approved by the electorate November 7, 1972.
LSA-R.S. 47:1901-2000, inclusive, is obviously designed to provide a system of uniform assessment and taxation throughout the state as a whole and each local taxing district, including parishes and special taxing districts comprised of two or more parishes or parts of parishes. The various sections establish a system of one assessor for each parish, save Orleans which is divided into multiple assessment districts having one assessor each. It is provided that all property shall be subject to taxation on the basis of its assessed value, which is fixed at actual cash value pursuant to Section 1957, and other Sections. Assessments are to be made annually pursuant to Sections 1952-1954, inclusive. The law provides, in effect, for assessment of property according to various classifications, such as, but not limited to, farmland, woodland, timberland, pasture, and such other classes as may be deemed reasonable. Assessment of properties of public utilities such as, but not limited to, common carriers, railroads, telephone and telegraph companies and pipe lines, is delegated exclusively to the Commission. In general, assessment of all other properties, movable and immovable, is delegated to assessors. Assessors are mandated to take into consideration enhanced values resulting from construction of improvements and sales of similar properties, and visit each piece of property either personally or through a deputy. Section 1958.
Express provision is made for the assessment of special classes of property such as credits, open accounts, mortgaged properties, bank stock, tung trees, oil refineries, electric cooperatives and certain types of plants and factories. Sections 1962-1978, inclusive.
Assessments must be completed by local assessors, Parish of Orleans excepted, on *698 or before May 1, each year. By this time, each assessor must submit to his local governing authority (usually the Parish Police Jury) his assessment lists and rolls containing a description of all property assessed to each individual taxpayer, the millage assessed thereon by each levying authority, the total millage assessed against each taxpayer, and the total millage assessed for the entire parish or section of Orleans Parish.
Upon submission of his rolls to the local governing authority, the assessor is required to give public notice thereof, following which the authority acts as a board of review for twenty days. During this interval, any property owner may protest and seek amendment of his assessment. Sections 1987 and 1992.
Equalization of taxes throughout the state was required of the Commission by Section 1988, before its repeal by Act 13 of the Extra Session of 1972. The section provided that assessors must submit an extract of their rolls to the Commission on or before June 30 of each year, on forms prescribed by the Commission. Said abstracts were required to show the number and class of acreage, the per acre value of each class of land appearing on the roll, the value of each item of enumerated property, and the total assessments involved. The Commission was charged with the duty of determining the actual cash value of all property assessed in each parish and throughout the state as a whole. After determining actual cash value of all property assessed for the whole state, the Commission was charged with the obligation of equalizing taxes by adjusting assessments up or down in any parish or parishes to accomplish a just and equitable equalization of assessments throughout the state, preserving, however, the principle of separate rates of increase for each class of property.
Review of assessments by the Commission is provided for by Section 1989, which was amended by Act 14 of the Extra Session of 1972. Before amendment, the Section provided for review of assessments by the Commission, and required the Commission to fix the percentage of actual value upon which state taxes must be collected after actual value for the whole state had been determined. Local taxing authorities were authorized to levy taxes and fix valuations at less than actual cash value, provided the percentage of actual cash valuation of the property assessed could not be less than 25% of actual cash value fixed by the Commission, and provided further that for local purposes, the percentage shall operate equally and uniformly on all taxable property within a parish or other local subdivision on the basis of actual cash valuation fixed by the Commission. The amendment deleted the language requiring the Commission to fix the percentage of actual cash valuation to be used for the collection of state taxes. It further amended the section by deleting the 25% limitation formerly placed on local taxing authorities by authorizing said authorities to levy taxes on and fix valuations at less than actual cash valuation, as they deem fit, provided that for local purposes, percentages adopted apply equally and uniformly on all taxable property within a parish or other local district on the basis of actual value fixed by the Commission.
The right of a taxpayer to review of his assessment by the Commission is provided in Section 1992. Judicial review of the actions taken by an assessor, a local governing body sitting as a board of review, and of the Commission's decisions on review is provided by Section 1998, for all parishes save Orleans. Sections 1994-1997, dealing exclusively with the Parish of Orleans, contain a provision for judicial review for that Parish. Where property is situated in more than one parish, judicial review is provided for in Section 2000.
LSA-R.S. 47:1701 and 1704, formerly provided for the levy of state ad valorem taxes aggregating five and three-quarter mills and provided for distribution thereof. *699 These statutes repealed by Act 3 of the Extra Session of 1972.
Before the passage of Act 15 of the Extra Session of 1972, LSA-R.S. 47-1976 placed electric cooperatives in a special tax class, subject to taxation at 10% of actual cash value. Act 15, above, amended the section by deleting therefrom all reference to state tax purposes. The statute remains only as authority for taxation for local tax purposes. However, it still provides that the properties of such cooperatives shall be valued by assessing authorities at ten per cent of actual cash value and so listed.
Plaintiffs acknowledge that the above mentioned constitutional and statutory amendments adopted and approved in 1972, have effectively repealed the state wide ad valorem tax theretofore levied, and that no such tax presently exists. Plaintiffs contend, however, and the lower court so held, that notwithstanding said amendments, there still exists legislative requirement for the assessment of property at actual cash value for ad valorem tax purposes as regards parishes and special taxing districts composed of two or more parishes or parts of parishes, or combinations thereof. Plaintiffs also contend, and the trial court so held, that the present system of assessment results in discrimination against owners of similar classes of property within individual parishes. Plaintiffs further contended successfully below that Article X, Section 1, of our state constitution, and the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution, require equality in assessment, imposition and collection of taxes. Plaintiffs argue that the remaining statutory provisions governing ad valorem taxes provide for review of assessments by the Commission which is still expressly charged with the responsibility of fixing the value of all taxable property in the state at actual cash value, pursuant to LSA-R.S. 47:1989, as amended in 1972, and other statutes.
The Commission concedes La. Constitution Article X, Section 1, required state wide uniformity of assessment when a state wide ad valorem tax was in effect, but that the repeal thereof renders state wide uniformity and equality no longer necessary. The Commission argues the foregoing constitutional and statutory amendments presently vest all taxing authority in local officials (parish assessors), the Parish of Orleans excepted because it has multiple assessors.
According to the Commission, neither Article X, Section 1, of the Louisiana Constitution, the due process clause, nor the equal protection clause of the Fourteenth Amendment to the United States Constitution, require uniformly or equalization of taxes between entirely separate and distinct taxing units or districts. Consequently, so long as assessment procedures are uniform within each parish (or section of the Parish of Orleans) and within each multi-parish taxing district, no taxpayer has ground for complaint because no rights, constitutional or otherwise, are adversely affected.
The Commission concedes that present statutes require it to fix values for tax purposes, but contends there is no longer a requirement to assess property at actual cash value. The Commission argues that so long as equality of taxation is guaranteed within each taxing district, it is immaterial what other separate and independent taxing districts may do. The Commission suggests such a result is necessary considering that the financial needs of each parish and taxing district will vary, and each must be free to levy sufficient taxes to insure the efficient and orderly operation and conduct of its governmental functions.
The Commission's next contention is that the only remaining statute which could conceivably support the position taken by plaintiffs and upheld by the trial court is LSA-R.S. 47:1957, which provides only that "All taxable property in the state shall be assessed by the Tax Commission. The *700 assessors shall be responsible, under the supervision of the tax commission, for listing and assessing all property within their respective parishes, except such property as is subject to direct assessment by the tax commission. All property subject to taxation shall be listed and assessed at actual cash value, and the actual cash value of all property fixed by the tax commission shall be the actual cash value for all purposes."
The Commission insists that Section 1957 merely confers supervisory authority upon it and does not mandate the Commission to equalize taxes throughout the state. The statute, according to the Commission, simply confers authority upon each assessor to assess property within its territorial jurisdiction within the limits of which equality is constitutionally guaranteed.
The Commission further urges that if property is required to be assessed at actual cash value, the law itself defines the term simply as that value at which property is assessed for tax purposes. In this regard, the Commission relies upon LSA-R. S. 47:1702(7), which defines "actual cash value or actual cash valuation" as "the valuation at which any real or personal property is assessed for the purposes of taxation after the assessing authorities have considered every element of value in arriving at such valuation." It is urged that this court define actual cash value as the term is defined in Section 1702.7, above, should we determine that property must be assessed at actual cash value.
Alternatively, the Commission contends that if the decree of the trial court is affirmed, its effect should be limited to those parishes situated within multi-parish taxing units.
Finally, the Commission argues that mandamus is improper in this instance because the Commission's limited staff, personnel and budget makes compliance therewith absolutely impossible.
The trial court correctly held that Article X, Section 1, of our State Constitution, and the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, protect a taxpayer from discrimination with regard to the assessment of his property for tax purposes and the levy and collection of taxes thereon.
It is settled that a taxpayer is entitled to have his property taxed at that percentage of value applicable to others equally and similarly situated, even though statutory law may provide otherwise. The rule is based on the principle that if both the standard of true value and the uniformity and equality required by law cannot be achieved, equality and uniformity is preferred under the law. Sioux City Bridge Co. v. Dakota County, Neb., 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340, 28 A. L.R. 979.
The equal protection clause of the Fourteenth Amendment to the United States Constitution protects a taxpayer from any state action which discriminates against him by subjecting his property to taxes not imposed on others in the same class. The right thus protected is the privilege of receiving equal treatment under law.
Although states have wide discretion in the area of taxation, such discretion may not be exercised so as to arbitrarily deprive taxpayers of constitutional rights. While the Fourteenth Amendment does not require exact uniformity and equality in matters of taxation, it does protect against intentional and arbitrary discrimination whether resulting from the express terms of a statute or its improper execution by those charged with its enforcement. Weissinger v. Boswell, D.C., 330 F.Supp. 615.
A state may establish reasonable classifications for the taxing of property at different rates. However, if state law requires that all property be taxed at a uniform rate and has enacted laws to insure such result, any substantial disparity or difference in taxes arising from failure of *701 state officers to properly administer the laws will be held in violation of the due process and equal protection clauses of the United States Constitution. Weissinger, above. To the same effect, see Louisville & Nashville R. Co. v. Public Serv. Comm. of Tenn., D.C., 249 F.Supp. 894.
Granted Louisiana no longer has a state wide ad valorem tax. Nevertheless, our laws still require that the Commission shall assess property for local tax purposes, and also stipulates in numerous instances, that assessment shall be for actual cash value or a specified percentage thereof depending upon the character and class of property involved. LSA-R.S. 47:1557, which applies to property in general, expressly provides for assessment at actual cash value. The last paragraph of Section 1989, as recently amended, provides that local taxing authorities may "levy taxes on and fix valuations, at less than actual cash valuation as they deem fit, provided further that for local purposes the percentage shall operate equally and uniformly on all taxable property within the parish or other local subdivision on the basis of the actual valuation fixed by the tax commission..." (Emphasis added.)
The following are further examples of statutory requirements still providing for assessment at actual cash value or the hereinafter designated percentages thereof: Lands dedicated to the growing of tung trees10%, Section 1974; factories utilizing specified waste materials25%; Section 1975, as amended by Act 188 of 1970; electric cooperatives10% of "actual value", Section 1976, as amended by Act 15 of Extra Session of 1972; Overflowed lands shall be re-assessed for "their actual value", Section 1978; gas and oil pipe lines and other named utilities assessed directly by the commissionactual value, Section 1979.
Section 1990 still authorizes the Commission to "change or correct any and all assessments of property for the purpose of taxation, in order to make the assessments conform to the true and correct valuation, not to exceed its actual cash value. (Emphasis added.)
The provision for review by the Commission authorized in Section 1992, states that within the delay granted, "any taxpayer may object to the amount fixed upon his property as its actual cash valuation by the tax commission ...." (Emphasis added.)
Review of assessments in Orleans Parish is provided by Section 1996, as amended by Act 316 of 1962. The section contains, inter alia, a provision that assessments for said parish may not be less than 25% "of the actual cash valuation as fixed by the tax commission." (Emphasis supplied.)
Section 1998, which provides for judicial review, states: "Any taxpayer in any instance where he shall be dissatisfied with the action of the parish board of reviewers in refusing to make a recommendation with respect to an actual cash valuation to the tax commission or with the tax commission upon its refusal to comply with such recommendation, or in regard to the actual cash valuation fixed by the tax commission, may resort to the district court for review of such action." (Emphasis added.)
There can be no question but that the Commission is still charged with the obligation of assessing property for taxation for local tax purposes, repeal of the statewide ad valorem tax to the contrary notwithstanding. The remaining statutes repeatedly state that valuations for tax purposes shall be fixed by the Commission. Neither is there any doubt concerning the duty of the Commission to supervise and direct the assessments required to be submitted to the Commission by the assessors for each parish. The Commission is still charged with prescribing the forms upon which assessors shall make their lists and rolls, as well as forms on which abstracts are to be furnished the Commission for review and ultimate fixing of actual cash value. Although local authorities may levy *702 and fix valuations at less than actual cash value (as provided by Section 1989, as amended in 1972), said statute clearly provides that assessments shall be equally and uniformly fixed on the basis of actual cash value fixed by the Commission. The Commission's valuation is the only basis for local assessment; without a cash valuation fixed by the Commission, local authorities would have no basis upon which to operate.
The record discloses that, whereas, the Commission has made limited efforts to achieve equality and uniformity as between parishes with respect to the assessment of properties in similar categories, no effort whatsoever has been made by the Commission to assess all property at actual cash value. The Commission's Chairman, Gordon Johnson, freely so acknowledged as did Commission member, G. Dupre Litton.
In 1968, the Commission issued to each assessor a two volume manual prepared at the Commission's expense by a firm of expert appraisers. The work purported to contain detailed information and procedure for the appraisal and evaluation of property. The Commission forwarded a copy thereof to each assessor without instructions. It is conceded that very little, if any, effort has been made by assessors to utilize the work in complying with the task of assessing property.
The Commission concedes that, as a general rule, each individual assessor compiles his rolls by establishing his own estimate of cash value, and arbitrarily takes and enters a percentage of such figure upon his rolls as the "actual cash value" of the property for tax purposes. The Commission is aware that the various assessors used diverse methods of establishing a basic actual cash value from which their respective percentages are taken. The Commission does not check to determine whether assessments of real property represent actual cash value unless a taxpayer protests his assessment. Absent protest, the Commission accepts the actual cash value figures submitted by the assessor because it lacks the staff, personnel and funds to individually check the myriad of assessments throughout the state. The Commission does review and check each assessment of personal property. The Commission acknowledges that by custom and practice, properties are divided into approximately 57 classes for assessment purposes. It is also the custom, according to the Commission, that each assessor adopts his own percentage of value for each class of property, and utilizes that figure as actual cash value for tax purposes. It is readily conceded the percentage varies from parish to parish and even within some parishes.
Commission member Litton explained that, as a general rule, movables and merchandise are assessed at the cost price thereof. He acknowledged that using cost as a basis, it is customary for the assessor of each parish to arbitrarily determine what percentage thereof he shall enter as the actual cash value thereof. He further noted that percentages employed by assessors in regard to movables vary from 25% to 60%. Mr. Dupre also noted that, as a rule, assessments of improved property, particularly residences, are generally fixed upon the basis of sale price, the assessment being based on the latest transfer. This results in gross inequality in that a recent purchaser is generally assessed more than the owner of an equally valuable residence which has not changed ownership for many years and is still assessed on the basis of its last sale price. Mr. Litton further noted there are a number of special taxing districts in the state, primarily levee districts, comprised of multiple parishes. He particularly noted the Ponchartrain Levee District comprising, among others, Jefferson and Ascension Parishes. A four mill tax is levied district wide in this taxing unit. In Jefferson Parish, however, the percentage of valuation assessed on properties is considerably less than percentages assessed on identical classes of properties in other parishes in the district, particularly Ascension Parish. As a result, *703 property owners in Ascension and other parishes pay a disproportionately higher levee district tax than do owners in Jefferson Parish. Mr. Litton frankly acknowledged that there is no semblance of uniformity among assessors in the assessment of property and that the Commission does not equalize taxes as required by law.
Mr. Eldridge J. Hance, Assessor, Allen Parish, testified he uses 10% of actual value, which he understands to be market value, in the assessment of real property, and 25% of the cost or inventory value of machinery and merchandise.
The assessor of Lafayette Parish, L. Ellis Dupleix, Jr., employs a system of assessing acreage of various classes at values which have been in effect for approximately 50 years. He does not consider purchase price at all in making acreage assessments. Unimproved subdivision properties he assesses according to lot sizes, a unit price of $80.00, $100.00, or some other figure, per lot being assessed dependent upon the class of subdivision. Mr. Dupleix noted that Lafayette Parish is in a multiple parish water district known as the Teche-Vermillion Waterworks District.
N. F. Pecquet, Jr., Assessor, West Baton Rouge Parish, testified in essence that he has divided his parish into eight districts or areas for assessing acreage. After determining what he deems actual cash value by employing recent sales of similar properties, he uses 10% of the figure attained as the assessed value. He assesses buildings and residences on a cost basis, considering size and type of construction. Upon arriving at a cost figure, he assesses the structure at 17% thereof. With regard to movables, he uses a figure of 25% of cost. Mr. Pecquet noted that his parish is in the Atchafalaya Basin Levee District, a multiparish taxing authority. Of particular importance is Mr. Pecquet's testimony that, utilizing a staff of three full time employees, he recently re-evaluated his entire parish without employing additional help. He further testified that he could re-evaluate his entire parish if compelled to do so.
Charles R. Hennington, Assessor of Caddo Parish, plaintiff's home parish, has divided his parish into five basic areas for assessment purposes. He employs a staff of appraisers who work on a schedule such that each piece of property is re-evaluated at least once every five years. He considers actual cash value to mean "market value less 7½% depreciation per year for 10 years in advance. This is what you would term 25%." In other words, he fixes what he considers market value and uses 25% of that figure in making his assessments. He concedes that this system does not provide absolute equality which is impossible in his opinion. Mr. Hennington noted that Caddo Parish is in a multi-parish taxing district consisting of about nine parishes, also including Bossier, Red River and Avoyelles Parishes, among others. He conceded that the ratio of assessment to actual value in Caddo Parish is among the highest in the entire state.
The record contains an analysis of the tax problem made by the Public Affairs Research Council entitled "Property Tax Inequities, Number 176", dated October, 1971, which examined the assessments of fifteen parishes. The report discloses patent inequities between assessments of similar properties in the parishes concerned, and also inequities in the assessment of property within each of the respective parishes as well. We note, however, that although there is a total lack of uniformity of standards employed in the various parishes, it does appear that most assessors at least strive for some uniformity within their individual parishes.
The record shows that in numerous multi-parish districts throughout the state, taxes are assessed and collected from owners of identical classes of property at different and discriminatory rates. This inequitable condition results from custom or tradition varying from parish to parish according to each assessor's reaction and response to local conditions. In Caddo Parish, plaintiffs pay a higher tax to the Red River Waterway District than do the owners of the *704 same class of property situated in other parishes within the same taxing unit.
An analysis of the assessment records of fifteen parishes was made by the Public Affairs Research Council and Gulf South Research Institute. A copy thereof appears in evidence. It discloses glaring inequities between similar classes of properties in the parishes involved. It also shows inequities between assessments of similar classes within each of the parishes analyzed. For example, a residence in Jefferson Parish sold for $12,500.00, and was assessed for $2,100.00, while another home in the same parish sold for $12,300.00, and was assessed for $400.00. In Lafayette Parish, a home sold for $8,000.00, and was assessed for $2,200.00, whereas, another which sold for $47,000.00 was also assessed for $2,200.00. The report further shows that in Calcasieu Parish, improved urban (residential) property is assessed at an average ratio of 15.2 per cent of cash value while unimproved lots are assessed at 3.1 per cent. The report also notes that in the parishes examined, the average assessment ratio to actual cash value of the three lowest average parishes is 5.7, 7.0 and 7.5 per cent for Allen, Lafayette and Jefferson Parishes, respectively. The parishes having the highest ratios are Caddo, Bossier and Avoyelles, with averages of 24.5, 19.4 and 18.3 per cent, respectively. It is clear beyond doubt that the present system of assessment for ad valorem tax purposes produces gross, arbitrary, inequitable and discriminatory results intolerable under the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. It is equally clear that plaintiffs are adversely affected thereby.
The numerous statutory provisions hereinabove cited and discussed vest sole responsibility upon the Commission to assess property at its actual cash value for ad valorem tax purposes. The Commission is still charged with the duty of furnishing forms to local assessors, receiving abstracts from which actual cash value is to be fixed by the Commission, fixing actual cash value of all property assessed in the state as a basis for local levy of taxes, and receiving and acting upon protests by taxpayers who complain of the actions of a local assessor or parish board of review. We find no basis for the Commission's contention that it lacks authority to supervise local assessors and fix values for ad valorem tax purposes.
We find no merit in the Commission's argument to the effect that actual cash value means the value at which property is assessed by local assessors, pursuant to Section 1702(7) above. Such a restricted and limited interpretation would, in our opinion, only serve to perpetuate the confusion, inequality and lack of uniformity presently prevailing. It would also continue a system which fails to afford local assessors meaningful, practicable acceptable and utile standards necessary to achieve the degree of uniformity and equality required by constitutional provisions.
On numerous occasions, the Supreme Court has held "actual cash value", as the term is used in tax statutes, to mean that price at which property, real or personal, would sell for cash in the ordinary course of business, free of encumbrances otherwise than by forced sale. Peavy-Wilson Lumber Co. v. Jackson, 161 La. 669, 109 So. 351; Lyon Lumber Co. v. Louisiana Tax Commission, 158 La. 990, 105 So. 39; Industrial Lumber Co. v. Oden, 147 La. 751, 85 So. 901; Soniat v. Board of State Affairs, 146 La. 450, 83 So. 760. It appears that these authorities followed the statutory definition of actual cash value formerly contained in Act 170 of 1898, Section 91. It is equally clear said former definition has been changed by present LSA-R.S. 47:1702(7), which states that actual cash value means "the valuation at which any real or personal property is assessed for the purpose of taxation, after the assessing authorities have considered every element of value in arriving at such *705 valuation." We have shown that the interpretation of actual cash value urged by the Commission is constitutionally unacceptable.
It is well settled constitutional law that a statute should be held constitutional if at all possible, and that courts should strive to find a meaning that will render a law valid rather than invalid. Branton v. Parker, La.App., 233 So.2d 278.
We note that Section 1702(7), above, provides that the price at which property has been sold in the ordinary course of business, free of encumbrances, shall be evidentiary only, and considered with other factors in determining cash value. We also note that Section 1958, above, provides that in fixing actual cash value, assessors shall inquire into the purchase price paid by the owner, and acquaint himself with any sales or transactions of property of like description or value made or effected in the vicinity within the year or years next preceding the listing for assessments then being made, and shall consider the prices paid for such properties in making his assessments. Viewing these sections together, we conclude, as did the trial court, that the legislature intended actual cash value in this instance to be the equivalent of market value. We hold, therefore, that actual cash value, as used in the statute under consideration, means market value, namely, that price which would be paid by a willing and informed buyer to a willing and informed seller on the open market in the ordinary course of business.
The Commission's contention it lacks staff, personnel and funds to accomplish the gigantic task of re-evaluation and re-assessment of the entire state is without merit. We initially note the Commission's frank admission it has never attempted to achieve uniformity and equalization because it considered the undertaking hopeless and impossible.
We do not view the Commission's obligation as either hopeless or impossible. It is true the Commission must actually fix cash value for tax purposes. The statutes make it clear, however, that the obligation of the Commission is principally supervisory in nature. The actual investigation required for making the initial listings and estimates of cash value rests upon local assessors and their staffs. The Commission merely reviews the reports and abstracts of assessments furnished the Commission by local assessors. The statutes also authorize the Commission to instruct and advise assessors and their staffs with respect to standards and norms of assessment procedure and practice which will insure uniformity and equality.
The record convinces us that if so ordered and directed by the Commission, local assessors could, within a reasonable time, accomplish the task of re-evaluation required to meet constitutional requirements.
Mr. Pecquet, Assessor of West Baton Rouge Parish, acknowledged that the work could be done in his parish with his present staff and personnel. Mr. Hennington, Assessor of Caddo Parish, testified in essence that he was able with his present staff to re-evaluate all property within a five year cycle.
We reject the Commission's argument that mandamus should not issue herein because it lacks the funds to carry out such a directive. The Commission alleges it cannot comply with such a directive unless the legislature increases its appropriation of funds to permit employment of the extra personnel required by such program, and while the Court may order the Commission to comply with certain laws, the Court cannot require the legislature to appropriate funds therefor.
Our answer to this argument is twofold. First, we do not purport herein to order the legislature to do anything whatsoever. Secondly, our faith in the integrity of the legislature impels the belief that the legislature will perform its duty, as a member of our tri-partite system of government of *706 constitutional guarantees decreed by the courts.
We find that the scope of the undertaking ordered herein requires an extension of the time allotted the Commission in which to comply. We will, therefore, extend the period of compliance to commence with all tax rolls submitted by local assessors after January 1, 1976.
It is ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby amended to make its decrees and mandates effective as to all tax rolls submitted by local assessors subsequent to January 1, 1976, and except as thus amended, the decision is affirmed. All costs of these proceedings assessable against the Commission by law shall be paid by the Commission; all other costs to be paid by plaintiffs.
Amended and affirmed.