325 So.2d 665 (1976)
Cliff PROBST
v.
The CITY OF NEW ORLEANS et al.
No. 7097.
Court of Appeal of Louisiana, Fourth Circuit.
January 2, 1976.
Rehearing Denied January 28, 1976.
Writs Granted March 19, 1976.
*666 Montgomery, Barnett, Brown & Read, Nathan T. Gisclair, Jr., New Orleans, for plaintiff-appellant.
Philip S. Brooks, City Atty., Beuker F. Amann, Lee R. Miller, Jr., Philip D. Lorio, III, Asst. City Attys., for the City of New Orleans and the City Council of New Orleans, defendants-appellees.
Gasper J. Schiro, New Orleans, for Lawrence Comiskey, defendant-appellee.
William J. Guste, Jr., Atty. Gen., Robert L. Danner, Jr., Staff Atty., New Orleans, for the La. Tax Commission and the State of Louisiana, defendants-appellees.
Before SAMUEL, STOULIG and BOUTALL, JJ.
STOULIG, Judge.
This appeal concerns the validity and constitutionality of a 1973 ad valorem tax on realty within the Central Business District (CBD) of the City of New Orleans. In 1972, Cliff Probst paid a $608 city property tax on his lot at Poydras Street and Loyola Avenue in the CBD. In 1973 he was billed almost seven times that amount, or $4,202, on the same lot. The increase came about because the taxing authority began to revalue certain properties in the CBD. Plaintiff paid the 1973 tax under protest and then filed suit to have the 1973 assessment declared null and void and to recover the excess between the 1972 and 1973 tax. If successful the effect of plaintiff's action would be to reinstate the 1972 assessment. From a judgment dismissing his suit, plaintiff has appealed.
Appellant advances two arguments for reversal:
1. The assessment is unconstitutional in that a program of revaluation of property was instituted on a selective, rather than a uniform basis, resulting in a disparity of taxation between individuals and businesses similarly situated. It is argued this violates the equal protection and due process clauses of the federal and state constitutions.[1]
2. The tax rate attacked is the highest levied within the City of New Orleans and has been made to apply to a geographic district designated by City officials. Plaintiff contends the State reserves unto itself the right to designate special classifications for taxation purposes and any attempt by a local government to do so without legislative or constitutional authority is null and void.
By way of background, the City of New Orleans (constituting the entire Parish of Orleans) is divided into multiple assessment districts with one assessor elected for each district.[2] It is the assessor's function to appraise properties within his district and list the assigned values on the tax rolls. This list is reviewed by the Board of Review (Board),[3] which has the authority to propose changes in the tax rolls by way of resolution to the Louisiana Tax *667 Commission. This commission is required to review assessments and approve tax rolls of all assessors throughout the State and may or may not adopt the resolutions proposed by the Board.
In the case before us, plaintiff's tax increase was the direct result of action by the Board. At a 1971 meeting the Board "* * * passed a resolution to create an advisory committee to the board to operate during the year to try to develop methods of creating greater equality in assessments throughout the city * * *."
To implement this resolution the Board's staff worked through the following year to reappraise numerous properties, but the reappraisal was not on a citywide basis. The revaluation was limited to the metro business area, which comprises a portion of the First Municipal Assessment District (First District) and a portion of the Second Municipal Assessment District (Second District). Five appraisers were employed by the City to revalue property in that part of the First District bounded by Canal Street, the Mississippi River, the Expressway and South Claiborne Avenue; and in that part of the Second District bounded by Esplanade Avenue, North Rampart Street, Iberville Street, North Claiborne Avenue, Canal Street and the Mississippi River.
Because of the enormity of the undertaking, individual appraisals were not made. Instead property was valued so much per square foot, the value being set primarily by the street location on which the property fronted. For the purposes of this opinion we need not set forth valuation methods with more particularity. Once the square-foot value was assigned by the appraisers, the assessor was expected by the Board to fix the assessment at 331/3 percent of the appraised land value.
In 1972 the assessor for the First District cooperated with the Board and thus the assessments were adjusted in accordance with its plan only in that part of the First District delineated above. The Second District assessor refused to adjust the assessments as recommended by the Board and the valuation did not become effective in his district for 1973 because of insufficient time for the Board to secure the approval of the Tax Commission. However in 1974, the Board by resolution to the Commission changed his tax rolls to reflect the increased assessments on the revalued property. In two other municipal districts (Third and Fifth Districts) there have been piecemeal revaluation programs.
The evidence establishes the Board devised a revaluation program designed within a specified time period to effect only those properties within the First and Second Districts comprising the CBD. It was the declared objective of the City taxing authority to ultimately revalue and equalize property tax throughout the entire City, but no timetable had been set for the accomplishment of equalization citywide nor was any plan formulated at the time the CBD was revalued.
While the record indicates the Board staff has abandoned any hope of proceeding on a district by district revaluation (if such an idea was ever proposed), it reflects the tax officials are tentatively planning to proceed on a revaluation based on property classification. For example, vacant property in all districts would be revalued the first year; in the second year, industrial; and so on. It is apparent this idea has not been developed into a comprehensive plan with a definite projected completion schedule. Therefore, plaintiff and other property owners within the CBD must pay, for an indefinite time, higher property taxes than persons similarly situated without the CBD but within the same municipal district or in other sections of the City.
The testimony of the First District assessor establishes this range of ratios of *668 percentages of actual value used for assessment purposes throughout his district:

 CBD commercial properties 331/3%
 Light and heavy industrial
 (outside the CBD) 25%
 Commercial properties
 (outside the CBD) 25% to 30%

In addition to this disparity, those properties outside the CBD in the First District are not scheduled for a systematic reappraisal to adjust their tax base to current market value.

CONSTITUTIONALITY
All citizens are guaranteed equal protection of law by U.S.Const. art. XIV and LSA-Const. Art. 1, § 2 (1921). The equal protection principle, as it applies to taxation, is reiterated as a constitutional right by that part of LSA-Const. Art. 10, § 1 in these words: "* * * all taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax * * *." The right to uniformity of taxation is synonymous with the right to equal protection under the law in the area of taxation.
The United States Supreme Court in a landmark decision, Sunday Lake Iron Co. v. Township of Wakefield,[4] pointed out the equal protection clause of the Fourteenth Amendment is designed to protect each taxpayer against bearing a disproportionate share of the tax burden as a result of discrimination, either in the statute itself or the manner in which it is administered. Specifically the Court held "* * * an intentional systematic undervaluation by state officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of property * * *."
The City argues it has undertaken a program of piecemeal revaluation in response to the "State Supreme Court's mandate in Bussie v. Long"[5] to revalue property in the Parish at actual cash value. The Board decided to begin the process in the geographical area known as the CBD. (We note at this point the Bussie decision was rendered in 1973 and the revaluation program of which plaintiff complains was initiated in 1971; therefore we are somewhat confused by the statement the City is attempting to comply with a court decree.)
In any event, the City argues state and federal courts, recognizing the limited resources often available to taxing authorities in undertaking revaluation programs, have approved piecemeal reassessment plans as constitutional. The City has cited numerous cases in which cyclical plans of revaluation have been held constitutional; however, these are inapposite to the instant case. In the cited cases a legislative body has formulated an equalization plan requiring revaluation of property throughout the jurisdiction of the taxing authority within a specified period of time. For a cyclical revaluation program to meet the equal protection and uniformity requirements it must be systematic and nondiscriminatory. In Carkonen v. Williams[6] the Supreme Court of Washington observed:
"In keeping with the import of the Sunday Lake decision * * * state courts which have considered cyclical revaluation programs have generally found them to be compatible with constitutional equal protection and uniformity provisions, provided they be carried out systematically and without intentional discrimination."

This same Washington court declared unconstitutional a tax revaluation of 6 percent of the property within a county when *669 the assessor, under a four-year cyclical revaluation law of the state legislature, was required to reassess 25 percent of the land in his county within one year. Even though he testified he could revalue the remaining 94 percent within the next three years of the program, the court held in Dore v. Kinnear:[7]
"Thus, where a cyclical program of revaluation is undertaken, a systematic and consistent program of revaluation must be maintained during each year of the cyclical period in a county. This would require that substantially an equal amount of taxable property in a county be revalued in each year of the cyclical program in order that all taxpayers receive the same treatment within the cyclical period to avoid derogation of the equal protection clauses of our federal and state constitutions and the uniformity of taxation clauses of our state constitution."
We subscribed to the quoted views, and if we apply that criteria to the plaintiff's situation, we can only conclude the tax levy on his CBD property violates his state and federal constitutional guarantees of equal protection of law and his state constitutional right to uniformity of taxation.
What renders the action of the Board unconstitutional in revaluing the property in the CBD is that it proceeded without a systematic plan to completely equalize taxes by revaluing properties throughout the City. Nicholas Gagliano, executive assistant to the Mayor of New Orleans, conceded complete equalization should have been attempted but it was anticipated the plan for geographic equalization would be opposed by certain assessors. He confirmed the attempt at geographic revaluation (such as it was) was abandoned and the reassessment by classification of property was substituted in its place. No plan of revaluation by this latter method was ever formally adopted by the Board.
We therefore hold the 1973 assessment unconstitutional.

INVALIDITY
Because we conclude the 1973 assessment is a nullity in that it violates the constitutional guarantees of equal protection and uniformity, we need not discuss at length the arguments on its validity under our state statutes and constitution. We do hold however there is no basis in law for the City of New Orleans to create a geographic district and subject it to a special ad valorem tax. The power to create special classes for taxation purposes is reserved to the State and the requirement of uniform taxation can only be superceded by action of the state legislature. In Bussie v. Long, 286 So.2d 689 (La.App.1st Cir. 1973), the court noted:
"A state may establish reasonable classifications for the taxing of property at different rates. However, if state law requires that all property be taxed at a uniform rate and has enacted laws to insure such result, any substantial disparity or difference in taxes arising from failure of state officers to properly administer the laws will be held in violation of the due process and equal protection clauses of the United States Constitution. Weissinger, above. To the same effect, see Louisville & Nashville R. Co. v. Public Serv. Comm. of Tenn., D.C., 249 F.Supp. 894."
In 1972 a proposed constitutional amendment was rejected by the people of the State of Louisiana that would have set up the CBD as a separately assessed and taxed public improvement district. Thus in revaluing CBD properties the Board had no legal basis for treating this area as a separate and distinct class for tax purposes.
We cannot grant plaintiff's claim for reimbursement of the taxes paid under *670 protest with interest because he failed to join the tax collector of the City of New Orleans, who is an indispensable party defendant[8] insofar as the claim for repayment is concerned. It is only to him that an order could be directed to reimburse the payments made under protest. LSA-R.S. 47:2110, the statute under which plaintiff brings his claim, directs in part:
"The right to sue for recovery of a tax paid under protest as provided herein shall afford a legal remedy and right of action in any state or federal court having jurisdiction of the parties and subject-matter, for a full and complete adjudication of any and all questions arising in the enforcement of such right respecting the legality of any tax accrued or accruing or the method of enforcement thereof. In any such suit, service of process upon the officer designated by law for the collection of the tax shall be sufficient service, and he shall be the sole necessary and proper party defendant in any such suit." (Emphasis added.)
There are two aspects to this suit, namely, a request for a ruling on constitutionality and a claim for reimbursement of tax paid under protest should plaintiff prevail. With respect to the issue of constitutionality, the tax collector is not an indispensable party and the proper defendants were cited to admit of its adjudication. However, under the quoted statute, the collector had to be joined in the claim for reimbursement. LSA-C.C.P. art. 641 defines an indispensable party as one whose interest in the subject matter is "* * * so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless [he is] * * * joined in the action." The express verbiage of the statute makes the tax collector the proper party defendant in any suit to recover a tax paid under protest. Since the Director of Finance (the tax collector for the City of New Orleans) has not been cited and made a party defendant, the court is powerless to condemn him in judgment to return the tax paid.
However commendable and laudable may have been the efforts of the Mayor and Council of the City of New Orleans to eliminate tax inequities existing in the CBD by the realistic adjustments of assessments, such an objective must be accomplished within the framework of the constitutional, statutory and jurisprudential guidelines of uniformity and equality.
For the reasons assigned, the judgment appealed from is annulled and set aside insofar as it decrees the 1973 Central Business District assessment constitutional and it is now ordered that said assessment be decreed to be unconstitutional. The increased amount of the 1973 assessment stated herein is declared to be null and void. Insofar as it dismisses plaintiff's suit for the return of the taxes paid under protest, the judgment appealed from is affirmed.
Annulled in part; affirmed in part; and rendered.

ON APPLICATIONS FOR REHEARING
PER CURIAM.
We recall that part of our original decree dismissing plaintiffs' suit for a refund of taxes paid under protest for failure to join "the officer designated by law for the collection of tax." Under C.C.P. art. 646 we remand this matter to permit plaintiffs to join the tax collector, who, we hold, is an indispensable party defendant. Accordingly the decree is amended as follows:
For the reasons assigned, the judgment appealed from is annulled and set aside insofar *671 as it decrees the 1973 Central Business District assessment constitutional and it is now ordered that said assessment be decreed to be unconstitutional. The increased amount of the 1973 assessment stated herein is declared to be null and void. Insofar as it dismisses plaintiffs' suit for the return of the taxes paid under protest, the judgment appealed from is set aside and this matter is remanded for the limited purpose of joining the tax collector as a party defendant and cite him to present whatever defense, if any, he has, so that an appropriate judgment may be rendered. Assessment of costs are to await the final determination of this matter.
Except as amended herein, we adhere to our original opinion. The applications for rehearing are refused.
Original decree recalled and, as amended, reinstated; rehearings refused.
NOTES
[1] U.S.Const. art. XIV; LSA-Const. Art. 1, § 2 (1921).
[2] All other Parishes each has one assessor.
[3] The Board consists of the Mayor, as chairman, together with the members of the City Council, a member of the Board of Liquidation, a member of the Sewerage and Water Board, the president of the Board of Commissioners of the New Orleans Levee District and the president of the Orleans Parish School Board. The assessor of the municipal district shall act in a nonvoting advisory capacity to the Board. LSA-R.S. 47:1931.
[4] 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1918).
[5] 286 So.2d 689 (La.App.1st Cir. 1973). Writs refused, 28 So.2d 354.
[6] 76 Wash.2d 617, 458 P.2d 280 (1969).
[7] 79 Wash.2d 755, 489 P.2d 898 (1971).
[8] An appellate court may note the non-joinder of an indispensable party on its own motion. C.C.P. art 927.